L. B. TUCKER et al., Appellees, v. HENRY LEISE et al., Appellants.

GUARANTY: Construction—Long Continued Mutual Construction—
1   Effect. A written guaranty by the seller of the assets of a bank "of all outstanding paper to the extent of 93 per cent owing said bank at this time" will be construed as guaranteeing 93 per cent of *each individual piece* of commercial paper, when such construction was the construction placed upon the contract by both parties thereto on numerous occasions subsequent to the execution of the contract. (See Book of Anno., Vol. 1, Sec. 11275.)

CONTRACTS: Construction—Ambiguous Contract. Principle reaffirmed
2   that, when a written contract is susceptible of two or more conflicting constructions, the court, in the quest for the proper construction, will give due consideration to (1) the situation of the parties, (2) the circumstances attending the transaction, and (3) the conduct of the parties.

Headnote 1:   28 C. J. p. 933.   Headnote 2:   13 C. J. pp. 542, 543, 546; 28 C. J. p. 932.

*Appeal from Marshall District Court.*—B. F. CUMMINGS, Judge.

DECEMBER 15, 1925.

ACTION in equity for the specific performance of a contract

for sale of bank stock and real estate. The court found for the plaintiffs, and the defendants appeal.—*Affirmed.*

*C. H. Van Law,* for appellants.

*E. N. Farber,* for appellees.

Albert, J.—The State Savings Bank of Liscomb, Iowa, had a capital of $10,000, for which 100 shares of stock were issued. The appellant Henry Leise owned 93 shares thereof. He was also the owner of a residence property in the same town. On the 8th day of July, 1920, appellant and his wife entered into a written option with appellees, by the terms of which appellees were to have an option to purchase said 93 shares of bank stock, together with the residence property, for the sum of $40,000, $1,000 of which was to be paid upon the execution of the option, $9,000 on the 1st of August, 1920, $15,000 on the 1st of March, 1921, and $15,000 on the 1st of March, 1922. Fifty shares of said stock were to be placed with Henry Leise as collateral for the deferred payments. The appellees exercised said option, made the $9,000 payment on the first of August, and took possession of the bank. The stock was delivered by Leise to Tucker, and 50 shares were redelivered by Tucker to Leise, as collateral security, in accordance with the terms of the contract. Among the provisions of the said option was this provision, signed by Henry Leise:

1. Guaranty: construction: long continued mutual construction: effect.

"I also guarantee the payment of all outstanding paper to the extent of 93 per cent owing said bank at this time. All renewals or extension of paper now owing said bank, which are consented to by me in writing, I will personally guarantee, but all renewals or extension of paper made by L. B. Tucker or Nellie E. Tucker, to the extent of 93 per cent, shall be without recourse on me."

It is on this provision of guaranty that this litigation centers.

Appellees contend that, under said written guaranty, appellants are liable for 93 per cent of each individual piece of commercial paper in the bank on July 8, 1920; while appellants con-

2. CONTRACTS:  tend that they are only liable for 93 per cent of
construction:  the aggregate amount of said paper. This,
ambiguous con-
tract.  therefore, calls for a construction of the guar-
anty clause in said option. The rule is too well settled to require
citation of authority that, where such clause is clear-cut, con-
cise, and unambiguous, the wording of the contract must control;
but it is also true that, where the wording of a contract is am-
biguous, or susceptible of two or more constructions, then the
situation of the parties and the circumstances surrounding the
transaction, together with the conduct of the parties in relation
thereto, must be considered, in ascertaining their intentions.
*Bridgeport Malleable Iron Co. v. Iowa Cutlery Works*, 130
Iowa 736; 28 Corpus Juris 933, Section 79.

Another rule of construction is that, where there is am-
biguity or obscurity, the doubt will be resolved against the party
making the guaranty. See cases cited above.

One of the matters that may be taken into consideration in
determining the intent of the parties is their conduct and actions
under the contract, subsequent to its execution. 28 Corpus
Juris 933; *Hamilton Trust Co. v. Shevlin*, 156 App. Div. 307
(141 N. Y. Supp. 232, 109 N. E. 1077). Section 11275, Code
of 1924, provides:

"When the terms of an agreement have been intended in a
different sense by the parties to it, that sense is to prevail against
either party in which he had reason to suppose the other under-
stood it."

Even a casual reading of the above guaranty shows that it
is ambiguous. This is apparent from the contentions of the re-
spective parties herein.

Among the surrounding circumstances that are to be con-
sidered in this matter are the following facts: The appellants
received for their bank stock a price amounting to four times the
par value thereof. Appellees were unacquainted with any of
the makers of the paper held by the bank, and unacquainted
with the financial standing of people in the community. Tucker
testified that, at the time of the making of the written option, he
stated to the scrivener, in substance, that Leise was to guarantee
93 per cent of each piece of commercial paper in the bank,

and that, when the contract was read over to him, he under-stood that that was the meaning of the terms thereof.

On March 1, 1921, when the first $15,000 payment was due, the parties met at the bank, and appellees presented to appellants a list of uncollectible notes, amounting to $13,756, and called upon Leise to make good his guaranty; whereupon, adjustment was made, and Leise credited 93 per cent or $12,793.06, on the Tucker contract. Tucker then paid to Leise $3,431.94, which made up the balance due on the $15,000, with interest. Prior to this time, however, when a note was found to be worthless or uncollectible, Leise, when called upon, made good to the appellees for 93 per cent thereof. From time to time thereafter, other notes were found to be uncollectible, and Leise made good on his guaranty. On the 1st of March, 1922, when the last $15,000 payment was due, a large number of notes were presented to Leise by Tucker, who claimed that they were either worthless or uncollectible, and demanded that Leise account to him for 93 per cent of the face of said notes, plus interest. At this point, Leise rebelled, and, having consulted an attorney, insisted that he was not liable thereon. He claimed that he was not liable on his guaranty for 93 per cent of each individual note, but was only liable for 93 per cent of the aggregate amount of the notes in the bank. The amount of the notes and interest on which settlement was attempted to be made on March 1, 1922, was $14,970.85. This included the personal note of Henry Leise for $1,730.46, and another note for $4,821.10 made by Claude C. LeFever, and guaranteed by Leise by indorsement. It is quite obvious that Tucker at all times understood this contract to mean that Leise was liable for 93 per cent of each note in the bank. On the other hand, it is equally apparent that, up to the time of March 1, 1922, Leise had the same understanding. He so conducted himself, and recognized the liability on this basis in all the transactions that occurred prior to March 1, 1922. We therefore have no hesitancy in arriving at the conclusion that Leise was liable, as contended by appellees, for 93 per cent of each individual piece of commercial paper. The district court so held, and we are of the opinion that it reached the correct conclusion.

It appears from the record that Tucker failed to receive a

deed from Leise for the real estate involved. The court decreec the making of such conveyance. The court further determinec the amount due on the March 1st payment from Tucker to Leise, and calculated Leise's liability to Tucker under this guaranty, and entered judgment accordingly, granting specific performance of the contract, as prayed for by appellees. In all the court did, it seems to have acted within the law.—*Affirmed.*

Faville, C. J., and Evans and Morling, JJ., concur.