FRANK L. BUSER, Appellee, v. GRANDE AVENUE LAND COMPANY, Appellant.

No. 40473.

JANUARY 13, 1931.

*Crissman, Linville & Bleakley* and *Donnelly, Lynch, Anderson & Lynch,* for appellant.

*Elmer A. Johnson,* for appellee.

KINDIG, J.—On October 27, 1925, the appellant, Grande Avenue Land Company, then owning part of Lots 30 and 40 in Ridgewood, an addition to Cedar Rapids, sold the same to Paul L. Knolk, under a written contract providing for deferred payments. The total consideration agreed upon between the vendor and the vendee was $4,068, payable $200 in cash and the remainder on the installment plan. Contained in the contract of sale were the following material provisions:

"Party of the second part (Paul L. Knolk) shall be entitled to possession of said premises at once and thereafter so long as he shall perform the obligations of this contract. When the balance due hereunder has been reduced to $2,624, and house is started hereon and title is needed for purpose of providing funds from bldg. and loan assn., party of the first part (Grande Avenue Land Company) agrees to execute deed and accept in settlement for the balance due hereunder a mortgage payable in three years from date hereof, in payments of $26.44 including interest at 7 per cent per annum, said mortgage to be subject only to a first mortgage in favor of a local building and loan association. * * *

"It is understood and agreed between the parties hereto that the said Ridgewood Addition to the City of Cedar Rapids, Iowa, shall be used for private residence purposes only, and as a part of the consideration for the conveyance of said premises, the following restrictions and conditions upon the use of said premises are hereby expressly agreed to by the grantee herein, for himself, his heirs, legal representatives, grantees and assigns, as covenants running with the land, to wit:

"1. No building nor any part of any building other than a single, private dwelling house, which shall cost not less than eight thousand dollars ($8,000.00) if located north of Blake Boulevard in Ridgewood, excepting Lots 54 to 60 inclusive, or six thousand dollars ($6,000.00) if located south of Blake Boulevard in Ridgewood, or on said Lots 54 to 60 inclusive, and the necessary barn or stable and outhouses appurtenant thereto, shall be erected or maintained upon any one lot herein conveyed, except as hereinafter provided."

Many other restrictions and regulations are contained in the contract, indicating that the property was sold contemplating the construction of imposing and appropriate houses, in order that the addition might appeal to prospective buyers desiring expensive residences.

Following the execution of the contract, the vendee, Knolk, continued to pay the installments, until, on September 30, 1926, the amount still due was $2,800.75. Then, on said date, the appellant sold and assigned to the appellee, Frank L. Buser, all right, title, and interest in and to the foregoing contract for the consideration of $2,800.75. In words and figures, the foregoing assignment is:

"For value received, the Grande Avenue Land Company [appellant] hereby sells, assigns, and transfers unto Frank L. Buser [appellee] all of its right, title and interest in and to a certain contract dated October 27, 1925, by and between the Grande Avenue Land Company, party of the first part, and Paul L. Knolk and Margaret Carol Knolk (husband and wife) party of the second part, being a contract for the sale and purchase of the following described real estate, to wit: A part of Lots thirty-nine (39) and forty (40) in Ridgewood an addition to the city of Cedar Rapids. And the Grande Avenue Land Company does hereby guarantee that the amount due from party of the second

part on said contract is $2,800.75 payable in monthly installments and bearing interest at the rate of seven per cent annum, and that there are no offsets or counterclaims against said amount. Grande Avenue Land Company hereby agrees to indemnify the said Frank L. Buser or his assigns against loss or damage by reason of nonpayment of the within contract or any part thereof.

"Dated at Cedar Rapids, Iowa, this 30th day of September, A. D. 1926."

Supplemental to the foregoing assignment is the following writing, under date of November 9, 1926:

"It was the intention of the Grande Avenue Land Company [appellant] to guarantee the payment of both principal and interest, and this interpretation may be considered as associated with the assignment and guarantee."

Under the assignment, the vendee, Knolk, continued paying the installments on the purchase price as they became due, according to the original contract, and commenced to build a house on the premises. When the aforesaid purchase price was reduced from $2,800.75, the amount named in the assignment agreement, to $2,624, the sum required as a prerequisite for the exercise of the option made in the original contract above quoted, Knolk, the vendee, on January 11, 1928, demanded a deed in accordance with such option. Accordingly, the appellee executed a deed for the premises to the vendee, Knolk, and received from Knolk a note for $2,624, covered by a second mortgage, subject to a first mortgage of $6,500 held by the Bohemian Savings & Loan Association, a local building and loan company. This was in compliance with the optional agreement contained in the original contract above mentioned.

Knolk, after making the first and second mortgage, failed to complete the house or discharge the mortgage encumbrances as they became due. Consequently, the Bohemian Savings & Loan Association aforesaid, holding the first mortgage, on February 11, 1929, obtained a judgment of foreclosure to satisfy the sum then due, which, including costs, aggregated $7,758.05. As a part of the judgment and decree of foreclosure, a receiver was appointed for the premises, and authorized to complete the building according to the original plans. Such receiver incurred an expense of approximately $4,000 for the purpose of finishing the

house, the construction of which was started by Knolk. It appears that the value of the premises, with the completed house, is $10,000. The total amount due under the first mortgage and the receivership proceedings is about $11,758.05. In addition thereto, the court established certain mechanics' liens as superior claims to the appellee's second mortgage.

So it is evident that the mortgaged premises will not wholly satisfy the first encumbrance. Nothing, then, is left out of which to pay appellee's second mortgage or the mechanics' liens. No sums due under either mortgage can be obtained from Knolk, because he is insolvent. Hence, appellee brought this action against the appellant on the aforesaid guaranty contained in the assignment agreement. After a trial to the district court, a jury being waived, a judgment was entered in appellee's favor, and from this the appellant appeals. Four grounds for reversal are stated.

I. A claim is first made by appellant that the stipulation for the option in the real estate contract is void for uncertainty. That option, it will be recalled, permitted the vendee to demand  a deed from the vendor when the specified amount of the purchase price had been paid. There is no specific statement in the contract fixing the exact amount of the first mortgage. Therefore, appellant contends that Knolk, the vendee, could not have compelled appellee to deliver a deed until the full and entire consideration was paid. Uncertainty, under that theory, having destroyed the contract, appellant concludes that, by allowing appellee to recover, the district court added to the original agreement by implication. Appellant urges intendment or implication cannot create or add to the obligation of a guarantor. At this juncture, appellant relies upon *Bousquet v. Ward*, 116 Iowa 126; *Schoonover v. Osborne Bros.*, 108 Iowa 453, 457; *Merchants' Nat. Bank v. Cressey*, 164 Iowa 725; *Ida County Sav. Bank v. Seidensticker*, 128 Iowa 54. When limited to the proper facts and circumstances, unquestionably the above and foregoing authorities are sound. Those principles of law thus contended for by appellant are not applicable to the record in the case at bar. Here, appellant apparently was laying out a new addition in Cedar Rapids, and desired to have the same developed in such a manner as would lend dignity and desir-

ability, in order that new purchasers might be induced to acquire lots on which to erect homes. To promote that object, the contract in question required that the house on the lot purchased by Knolk should cost not less than $6,000. This minimum of $6,000 is adopted, rather than that of $8,000, set forth in the contract before quoted, because the record is vague concerning where the property is located, and such location determines which amount shall control. That sum, then, was to be the minimum cost of the house, and the general invitation was that a more valuable building should be constructed. Manifestly, the appellant understood that the expense of building the house would be raised by borrowing money from a building and loan association. In fact, the option agreement above quoted so indicates. Such was the contract entered into between appellant and the vendee, Knolk. This was the agreement assigned to appellee by appellant.

Both the assignment and the real estate contract were prepared by appellant. Their phraseology embodies appellant's dictation. No indication at any time was given appellee by appellant  that Knolk was not entitled to receive a deed in return for a second mortgage when the purchase price was sufficiently reduced. Likewise, appellant at all times understood that Knolk would build a house of the size and value contemplated. The first mortgage was for the amount of $6,500. Everything in the record suggests that appellant desired Knolk to build a house which would cost at least that amount. Under that record, then, the guaranty agreement, as disclosed, does not in any way misrepresent or contradict the intention of the parties. Perhaps the guaranty contract did not express such intention "so clearly as to make it beyond all question." Moreover, the object of the guaranty contract entered into by appellant was, in effect, to procure credit from appellee. Resultantly, the agreement will be given construction according to the intention of the parties as the same "may be disclosed" by the language employed and the circumstances under which the guaranty is given. *S. Hamill Co. v. Woods*, 94 Iowa 246; *Bridgeport Malleable Iron Co. v. Iowa Cutlery Works*, 130 Iowa 736 (local citation 740, 741); *T. M. Sinclair & Co. v. National Sur. Co.*, 132 Iowa 549 (local citation 556, 557); *Tucker v. Leise*, 201 Iowa 48 (local citation 50). Quoted

excerpts from a case or two above cited will tend to elucidate at this point.

During our discussion in *T. M. Sinclair & Co. v. National Sur. Co.* (132 Iowa 549), supra, on pages 556, 557, we said:

"It is true, of course, that a contract may be so vague and indefinite as that it is impossible to collect from it the intent of the parties thereto; and in such cases the instrument is void, and no recovery may be had thereon, either at law or in equity. * * * But it is with great reluctance that courts reject any agreement as insensible or unintelligible. One of the canons of construction is to give effect to every provision of a contract, if possible and practicable; for the reason that the parties themselves evidently intended something thereby, and it is not for courts to reject the same unless it be so vague and uncertain that neither a general nor a particular intent can be gathered therefrom. In other words, a contract should be so construed, if possible, as to give effect to each and every provision thereof. * * * As between two constructions, each reasonable, one of which will accomplish the intention of the parties and make the contract an enforceable one, and the other which will make it unenforceable and meaningless, the former is to be preferred. * * * As the provision in this contract was inserted by defendant and for its benefit, any ambiguity therein is to be taken most strongly against the party who chose the language. * * * To arrive at the intent of the parties, the surrounding circumstances should be taken into account, and the court should place itself as nearly as may be in the position of the parties who made the contract. It should look to the subject-matter of the contract; the relation of the parties thereto, and the object and ends intended to be accomplished thereby."

Again, in *Tucker v. Leise* (201 Iowa 48), supra, on page 50, we declared:

"The rule is too well settled to require citation of authority that, where such [guaranty] clause is clear-cut, concise, and unambiguous, the wording of the contract must control; but it is also true that, where the wording of a contract is ambiguous, or susceptible of two or more constructions, then the situation of the parties and the circumstances surrounding the transaction, together with the conduct of the parties in relation thereto, must be

considered, in ascertaining their intentions. * * * Another rule of construction is that, where there is ambiguity or obscurity, the doubt will be resolved against the party making the guaranty.''

So, in the case at bar, as already stated, the guaranty agreement, as well as the real estate contract, was prepared and dictated by appellant. Through the assignment, appellant represented and pretended to be transferring to appellee a valuable and enforcible undertaking. Upon that occasion, nothing was even intimated by appellant to the effect that the real estate contract was not enforcible, nor did appellant then in any way suggest that a first mortgage sufficient to afford funds with which to construct a suitable and valuable house should not be placed upon the premises as a prior lien to the second mortgage contemplated by Knolk's agreement. Undoubtedly, such an option materially induced Knolk to sign the real estate contract.

Clearly, then, it was intended by appellant, when contracting with Knolk, that the first mortgage should be sufficient to complete the construction of a house at a cost above the minimum limit fixed in the contract. Considering the size of the house contemplated by the vendor, in order to improve the real estate addition in question, and giving full significance to all the other facts and circumstances of the record, we are constrained to hold that the contract between Knolk and appellant fairly contemplated a first real estate mortgage of the size here presented. Therefore, it cannot be said that the contract was so indefinite and uncertain as to be a nullity.

II.   In the second place, appellant argues that the guaranty agreement covered only the amount which Knolk owed under the real estate contract, and did not cover or include the alleged new obligation arising through the note and second mortgage.

We cannot agree with this contention. As previously indicated, the option agreement contained in the real estate contract contemplated a second mortgage under the circumstances  specified. Wherefore, when appellee gave the deed to, and received the second mortgage from, Knolk, the terms of the contract were being carried out. A refusal by appellee to execute a deed and receive the second mortgage would have amounted to a violation of the original real estate

contract. Appellee's conduct in the premises, therefore, was in strict compliance with the conditions of the real estate contract. The debt arising under the real estate contract was, according to the agreement, continued into, and evidenced by, the note secured by the second mortgage. At least that is true so far as the guaranty contract is concerned. Such guaranty agreement contains, among other matters, the following provision:

"The Grande Avenue Land Company [appellant] does hereby guarantee [to appellee] that the amount due from party of the second part [Knolk] on said contract [the real estate agreement] is $2,800.75, payable in monthly installments and bearing interest at the rate of seven per cent per annum, and that there are no offsets or counterclaims against said amount. Grande Avenue Land Company [appellant] hereby agrees to indemnify the said Frank L. Buser [appellee] or his assigns against loss or damage by reason of nonpayment of the within contract or any part thereof."

Explanatory of the thought expressed in the foregoing guaranty agreement are the following circumstances. Some discussion arose between appellant and appellee before the assignment was made, concerning the scope of the guaranty. For the purpose of quieting appellee, and giving him to understand that the guaranty was to be all-inclusive, the appellant, on November 9, 1926, as before stated, delivered to the former the following written communication:

"* * * It was the intention of the Grande Avenue Land Company [appellant] to guarantee the payment of both principal and interest, and this interpretation may be considered as associated with the assignment and guarantee."

Because of that communication, it appears that appellee was induced to purchase the contract from appellant and receive the assignment, together with the guaranty agreement. Said principal and interest named in the communication of November 9th, of course, referred to the sums due and to become due under the real estate contract. Those amounts due and thus to become due under the real estate contract were the consideration named in the note secured by the second mortgage. Then, if the guaranty agreement covered the principal and interest in the real estate contract, as it surely did, it was likewise broad enough in its scope

to include the same principal and interest named in the second mortgage. Otherwise, the result of the transaction would amount to an absurdity. When the assignment was made, the amount due on the real estate contract was $2,800.75. A deed was due Knolk when the indebtedness was reduced to $2,624. Thus, unless the guaranty covers the indebtedness when the form is changed to a second mortgage, it in fact only related to the difference between the $2,800.75 and $2,624, or $176.75. Neither party ever contemplated that result. There was no such novation, under the circumstances, as to release the appellant as guarantor. Novation did not arise to that extent, because the contract contemplated that the form of the indebtedness would be changed from that of a contract, under the option, to a note secured by a second mortgage. It is therefore clear that the guaranty covered the principal and interest, not only when due under the contract alone, but also as the same matured, according to the terms of the note secured by the second mortgage contemplated by the original agreement. See *Providence Mach. Co. v. Browning,* 72 S. C. 424 (52 S. E. 117).

III. Next, appellant urges that the appellee lost his right under the guaranty because he did not make sure that Knolk used the money received under the first mortgage for the purpose of paying debts, mechanics' liens, and building obligations arising during the construction of the house.

If we assume, without deciding, that Knolk did not use all the moneys received through the first mortgage for the purpose of paying such claims against the house, but applied said funds  to objects not contemplated by appellant, yet there was nothing appellee could have done, under the circumstances, to prevent that misapplication. No express power was given appellee under the real estate contract to interfere with Knolk's use of the moneys received through the first mortgage. Furthermore, appellee knew nothing about the fact that Knolk was diverting funds until it appeared to the world that the work was incomplete. Without supervisory power expressly conferred under the contract, and lacking knowledge of Knolk's misapplication of the funds, if any, it does not appear that appellee was negligent in not proceeding in equity or otherwise, if he could, to compel Knolk to properly disburse the funds. Under the facts

and circumstances, then, we cannot say that the guarantor was released because of the matters just discussed.

IV. Finally, it is claimed by appellant that the guarantor is released because the appellee, at the time the mortgage was foreclosed, did not properly protect the priority of the second mortgage over mechanics' liens.

It is to be recalled that, during the foreclosure proceedings, a receiver appointed by the district court under authority of that tribunal expended approximately $4,000 in completing the house. Also, notation should be made that claims were filed by material-men for mechanics' liens. These mechanics' liens amounted to nearly $975. A claim is made by appellant that the appellee consented in the foreclosure proceedings that the mechanics' liens should be prior to the second mortgage. That contention, however, is not borne out by the record. Appellee at all times claimed that his second mortgage was subject only to the first mortgage of $6,500. By so doing, appellee suggested to the court that both the mechanics' liens and the receiver's expenditures were inferior liens to that of the second mortgage. This argument of appellee's, however, was overruled by the district court, and the mechanics' liens, as well as the receiver's expenses, were established as prior to the second mortgage, regardless of the stand taken by appellee. At no time and by no method did appellee waive or relinquish any rights which he had under the second mortgage. Neither did appellee consent to the appointment of a receiver, or the expenditures made by him. Nor did the appellee consent, in the foreclosure proceedings, that the mechanics' liens were superior to his second mortgage. There is no evidence that the receivership expenditure and the mechanics' liens were made prior in the foreclosure proceedings through appellee's fraud or his collusion with the holder of the $6,500 first mortgage. Neither does it appear that appellee was in any way negligent in failing to protect the priority of the second mortgage. So, whether the judgment and decree of the district court in the respects mentioned is right or wrong, we do not now decide; for it is enough to find that appellee did everything he could to protect his lien. Appellant's complaints, therefore, are without merit.

Regardless of the mechanics' liens, the entire equity in the building lots was consumed to satisfy the first mortgage and the receivership expenditures. As a result, no prejudice arises, so

far as appellant is concerned; for, if there had been no mechanics' liens, the guaranty would become operative just the same, due to the size of the indebtedness under the first mortgage and the insufficient value of the house and lots.

Careful consideration has been given to the entire record and the arguments made by appellant, but, under all the circumstances, we are constrained to hold that there is no reversible error.

Wherefore, the judgment of the district court should be, and hereby is, affirmed.—*Affirmed.*

FAVILLE, C. J., and EVANS, MORLING, and GRIMM, JJ., concur.