FRANK J. P. STOFFEL et ux., appellees, v. ALEXANDER STOFFEL, appellant.

No. 47596.

(Reported in 41 N.W. 2d 16)

FEBRUARY 7, 1950.

Crary, Munger & Crary and Hatt & Huff, all of Sioux City, for appellant.

E. P. Murray, of Le Mars, for appellees.

SMITH, J.—Plaintiffs are parents of defendant. On May 21, 1936, they entered into written contract with him by which they turned over to him the livestock and farm machinery which they had used in operating their 223-acre farm. As a matter of fact the actual transfer had taken place a month or two before the written contract was drawn.

The contract provided that the conveyance was made *"upon condition that the second party furnish to first parties such provisions in connection with the support of first parties as they may demand, or if first parties shall require, the second party shall pay to first parties the sum of $600 annually or $50 per month, and if it is paid annually the said payments, if first parties so request, shall be payable on October 1st and February 1st of each year after the execution of this agreement.*

*"It is understood that the payments or the furnishing of goods or supplies represents the purchase price of said stock and machinery, but * * * if second party sells or disposes of the said stock, except in the usual course of handling farm products or in the event of the death of the said Alexander Stoffel, then in either event one half of the selling price of said property shall go to the first parties * * * and for the purpose of enforcing the claim of the first parties as in this instrument contemplated, the first parties shall have a lien on all of the said personal property * * * as well as upon the increase and additions thereto."* (Italics supplied for convenience of reference.)

Plaintiffs allege that from May 26, 1936, to September 26, 1948, defendant paid only the sum of $2856 whereas he should have paid $7400 (148 months at $50 per month). They asked judgment for the balance, $4544. They plead a second count on a collateral matter that is not involved on this appeal.

Defendant's answer is based on the theory that the total amount he was to pay on the written contract was the reasonable value of the personal property turned over to him, $3830.30; and he alleges he has paid plaintiffs in money and provisions "a total sum of not less than $4434.27."

In reply plaintiffs claim that plaintiff Frank Stoffel worked on the farm each year from 1936 to the spring of 1948 and that the farm produce and provisions defendant had furnished plaintiffs were "in part payment or as a consideration for" such services.

There was a verdict and judgment against defendant for $4414, and he appeals.

The ultimate question of fact at the trial was of course the extent of defendant's obligation in the transaction. Were his contributions to the support of his parents to continue for their lives or only until they equalled the reasonable value of the property? On appeal however the principal question is one of law and concerns the method of determining the extent of defendant's obligation—the extent to which parol evidence may be used in such determination.

The trial court held there was ambiguity in the contract as to the duration of the payments, admitted parol evidence on that issue, and submitted it to the jury. Defendant assigns error on these rulings.

I. The issue here requires little statement or discussion of the facts or the details of the parol evidence. Defendant does not question its sufficiency to sustain the verdict, if it be held admissible. Much of it was not objected to.

Defendant's position is fairly indicated by the opening statement of his argument: "If the value of the personal property had been inserted in the contract * * * the instrument would have been complete."

This of course assumes the contract clearly shows that the reasonable value of the personal property constituted the amount

of consideration he was to pay for it. We do not so read it. We agree with the trial court that there was ambiguity as to whether the monthly or annual payments were to continue during plaintiffs' lives or only until they equalled the value of the property.

Defendant relies strongly upon the statement in the contract that the payments or the furnishing of supplies he was to make "represents the purchase price," as showing the contract to be one of sale and purchase. We cannot say these words are con·clusive of that fact any more than are the words in the preceding paragraph "in connection with the *support* of first parties * * *" conclusive as showing it to be a contract for support. Neither statement makes clear how long or how much defendant was to pay. All that is clear is that whatever amount defendant was to pay was the consideration or "purchase price" for the livestock and farm machinery he had received. And conversely, the livestock and machinery constituted the consideration for whatever "support" was to be furnished.

The matter is not clarified by the concluding language of the writing which only provides what shall happen in event of defendant's death or his bulk sale of the property, and which creates a lien upon it for plaintiffs' protection. The provision is not entirely inconsistent with either interpretation, though somewhat inconsistent with defendant's theory in that it would give plaintiffs one half the selling price (in event of such death or sale) without reference to the amount already paid them.

II. Defendant on appeal states his objection to the parol testimony in eight "points." So far as they announce abstract principles of law there can be no quarrel with them. They state with substantial accuracy the various angles of the "parol-evidence" rule.

The trouble with the argument is that it begs the real question, viz., is the contract ambiguous? Much of the argument on both sides naturally goes to the question of the real meaning or proper construction but it is not our duty or privilege to determine that question. It was submitted to the jury and determined under instruction, the *form* of which is not objected to.

Both parties offered parol testimony, plaintiffs to show the situation and circumstances of the transaction, and the claimed terms of the preliminary understanding under which plaintiffs

moved off and defendant moved on the premises a month or more before the written instrument was drawn; and defendant to show the value of the personalty received by him which value. he claimed fixed the limit of what he was to pay.

The conclusion that the contract is ambiguous virtually disposes of several of the "points" urged by defendant on appeal. It is of course elementary, as he says, that prior oral agreements or negotiations are presumed to be merged in the subsequent written form. But this rule manifestly does not control when the writing is ambiguous.

Other propositions advanced are equally inapplicable here: That "time of payment *other than that stated in the written instrument* cannot be shown by parol"; that "parol evidence is not admissible to show that the consideration is to be paid in *some other mode or manner than that expressed in the written contract"*; that "where the consideration *expressed in the contract* is in itself a promise" it cannot be varied.

We have italicized in the preceding enumeration the language making the propositions inapplicable here. The parol evidence here does not purport to *vary* the time, mode or manner of payment or the amount of the consideration. The manner of performance by defendant and the times for payment of installments are not *altered*. They are clearly prescribed by the writing.

As to the "consideration" to be paid or performed by defendant, while it is a "promise," it is not *clearly* "expressed in the contract" and consequently is not "varied" but only explained by the parol evidence.

III. The one debatable question involved here, as we view it, is referred to by the trial court in the suggestion made in ruling on defendant's motion for new trial: The ambiguity here being *patent,* was parol evidence admissible to resolve it? Or, on the other hand, if the trial court was unable to determine the meaning of the contract from the language itself, should the plaintiffs have been relegated to whatever relief they could obtain by reformation?

The distinction between patent and latent ambiguity is clearly stated in Palmer v. Albee, 50 Iowa 429, cited and relied on by defendant. Ambiguity is latent where the written language is apparently clear and certain but becomes doubtful in

the light of something extrinsic or collateral; it is patent when the language itself is doubtful or susceptible to more than one meaning. That case clearly states that in the case of *patent* ambiguity resort may not be had to parol evidence. One justice dissented but not from the broad general statement. He merely argued "the doctrine of ambiguities has no application to this case." (Page 435.)

We find in 20 Am. Jur., Evidence, section 1155, the statement: "Originally, ambiguities were classified as 'latent' and 'patent,' and this classification still exists in many jurisdictions. However, the distinction is gradually disappearing, and parol evidence is held admissible to explain an ambiguity whether latent or patent." See also 16 Am. Jur., Deeds, section 411.

And in 32 C. J. S., Evidence, section 961(d), page 919, it is pointed out that the broad rule as originally announced by Lord Bacon "has been subjected to much criticism on the ground it is too general, too broad, and not of universal application, and it has never been acted on in its widest extent, at least where the word 'ambiguity' is taken in its broad sense of doubtfulness, uncertainty, or double meaning, for there are to be found in the reports many cases where, although the ambiguity was such as should undoubtedly be designated as patent, if that term is taken in its broad sense, the courts have admitted evidence to explain it, or to show the circumstances surrounding the transaction and the situation of the parties. In addition to this there are many cases flatly repudiating this part of the rule and expressly holding that a patent as well as a latent ambiguity may be explained by extrinsic evidence."

In annotation 94 A. L. R. 26, II e, 4(b), on page 57, after stating the broad rule (referred to in Palmer v. Albee, supra) the annotator says:

"No such unqualified rule can stand in the face of the numerous cases admitting some extrinsic evidence where the indefiniteness, inaccuracy, or ambiguity was apparent on the face of the instrument. * * *

"According to the better view, or the more accurate statement of the true rule, extrinsic evidence is admissible to show the situation of the testator and all the relevant facts and cir-

cumstances surrounding him * * * for the purpose of explain-ing or resolving even a patent ambiguity."

While the annotation applies especially to will construction the annotator points out (page 30) that the rule in such cases is the same as, or more strict than, in the case of other instruments.

Unfortunately we get little aid from our own subsequent cases which refer to Palmer v. Albee, supra. In one case for specific performance it is cited, among other reasons, for affirm-ing the trial court's decision sustaining a demurrer. Gould v. Gunn, 161 Iowa 155, 163, 140 N.W. 380, 383.

Citations of it in other Iowa cases seem principally for the purpose of distinguishing them from it. Wallace v. Ryan, 93 Iowa 115, 118, 61 N.W. 395, 397; Covert v. Sebern, 73 Iowa 564, 567, 35 N.W. 636; Chambers v. Watson, 60 Iowa 339, 341, 14 N.W. 336, 337, 46 Am. Rep. 70; Ryan v. Litchfield, 162 Iowa 609, 612, 144 N.W. 313, 314; Daily v. Minnick, 117 Iowa 563, 572, 91 N.W. 913, 60 L. R. A. 840.

The cases which depart from the doctrine announced by the Palmer v. Albee case without expressly overruling or distinguish-ing it are too numerous to be ignored. The trial court gave care-ful consideration to the doctrine of Palmer v. Albee and ap-parently concluded it had been abandoned, citing American Sav. Bk. v. Shaver Carriage Co., 111 Iowa 137, 82 N.W. 484; Martin Steam-Feed Cooker Co. v. Olive, 82 Iowa 122, 47 N.W. 980; Vorthmann v. Great Lakes Pipe Line Co., 228 Iowa 53, 289 N.W. 746; State v. Butka, 230 Iowa 928, 933, 299 N.W. 420; and Iowa Elec. Co. v. Home Ins. Co., 235 Iowa 672, 677, 17 N.W. 2d 414. Other citations might be added. See Tucker v. Leise, 201 Iowa 48, 206 N.W. 258; Buser v. Grand Avenue Land Co., 211 Iowa 659, 234 N.W. 241; Sinclair & Co. v. National Surety Co., 132 Iowa 549, 556, 557, 107 N.W. 184, 187.

There are other cases which might be cited that are referred to in the foregoing. In several of those cited above it is stated that courts, with great reluctance "reject an agreement as in-sensible or unintelligible." Sinclair & Co. v. National Surety Co., supra; Buser v. Grand Avenue Land Co., supra; Vorthmann v. Great Lakes Pipe Line Co., supra.

The contract here clearly provides what defendant was to get in the transaction, which consideration he has received. It

also clearly provides that plaintiffs are to receive their support, translated into annual or monthly payments at their option. Unfortunately, in drawing the written form of the contract it was not made clear as to the duration of such support. What the parties intended was surely a proper subject for parol evidence. We cannot hold the contract a nullity or say reformation was necessary to give it validity. The trial court did not err.

IV. Error was assigned (and has been argued) upon the ruling permitting plaintiff Frank Stoffel to testify as to the value of the property turned over to defendant in the transaction. It is urged he was incompetent to express an opinion on that subject.

In view of our holding in the preceding divisions hereof, and the amount of the verdict returned, we need not pass on this assignment. It is apparent the jury took plaintiffs' view as to the measure of damages and the value of the property did not enter into their deliberations. The verdict was for the exact amount of unpaid monthly installments, less $100 the evidence shows was paid after the petition was filed.

Holding, as we do, that there was no error in the rulings complained of the judgment is affirmed.—Affirmed.

All JUSTICES concur.