### ALUMINUM CO. OF AMERICA v. HULLY et al.

#### No. 14488.

United States Court of Appeals
Eighth Circuit.

Nov. 25, 1952.

Rehearing Denied Dec. 15, 1952.

Larned A. Waterman, Davenport, Iowa (Charles D. Waterman, Davenport, Iowa, Otto C. Bauch, Des Moines, Iowa, and Lane & Waterman, Davenport, Iowa, on the brief), for appellant.

Wendell B. Gibson, Des Moines, Iowa, (Walter L. Stewart; Neill Garrett, and Gibson, Stewart & Garrett, Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought by the co-partnership here referred to as the asbestos contractor[1] to recover the unpaid balance for work and materials furnished by it under a written contract in the construction of the Works of the defendant Aluminum Company of America, herein referred to as Alcoa, at Davenport, Iowa. The plaintiff had performed its contract insofar as it had agreed "to furnish all supervision, labor, materials, tools, equipment, hauling, unloading and all other things necessary for the completion of installation of Johns-Manville (asbestos)[2] pipe covering for steam and condensate return pipe lines, valves, fittings, etc. at Owner's Davenport Iowa Works". It had earned $219,111.13 under the terms of the contract and had received $187,692.54. It prayed judgment for the balance of $31,418.59. The aluminum company did not deny the contract nor the amount earned under it nor the amount received, but it alleged a set-off in the amount of $26,599.00 which it claimed the right to deduct from the $31,418.59 and it tendered and kept open the tender of the difference of $4,819.59. When this suit was brought against it, it offered to pay the tendered amount into court.

The amount it claimed as a set-off was the amount which it had been obligated to pay out for judgment, interest, costs, expenses and attorney fees in a personal injury action brought against it in the State court in Iowa by one Earl Barnes. Barnes was employed by the asbestos contractor as one of its asbestos applicators in the performance of its contract with the aluminum company and while so employed in the aluminum company's factory building, referred to as the Remelt Building, he suffered personal injuries through the operation of that company's travelling crane which struck him and pinned him against the wall. At the moment he was struck he was not actually applying asbestos but was moving out of the reach of certain gases from the fluxing of a furnace in the building which gases he thought to be dangerous. He was intending to return to applying asbestos when the gases passed away which, it developed, would be only a matter of minutes. In his action he attributed his damages to negligence of the aluminum company in the operation of the crane.

That company notified the asbestos contractor and called upon it to defend the action, asserting that it was obligated to such defense and to indemnify the aluminum company under Article 24 of the Contract, reading as follows:

"Article 24. Liability To Others.

"The Contractor shall save and hold the Owner harmless from and against all liability, claims and demands on account of personal injuries, including death, or property loss or damage to others (including Contractor and employees of Contractor) arising out of or in any manner connected with the performance of this contract, whether such injury, loss or damage shall be caused by the negligence of Contractor, a subcontractor hereunder, Owner or otherwise and the Contractor shall at his own expense defend any and all actions based thereon and shall pay all charges of attorneys and all costs and other expenses arising therefrom."

The asbestos company having refused to assume defense of the Barnes action and having denied liability in respect to it under Article 24 of its contract, was

---

1. C. E. Hully and F. H. Wright, a co-partnership d. b. a. Central Asbestos & Supply Company.

2. Interpolated for clarity.

impleaded in the action by Alcoa as a defendant in third party proceedings. Such proceedings were ordered docketed separately by the State court and were continued until Barnes's case was tried. After Barnes recovered his judgment against Alcoa that company voluntarily dismissed the third party proceedings without prejudice.

In this action the only issue tried was whether or not Alcoa was entitled to the set-off and deduction claimed by it. The trial of that issue was to the court without a jury and the defenses asserted by the contractor and considered and passed on by the court were to the effect (1) that the provisions of Article 24 of the contract relied on by Alcoa were contrary to public policy and void, and (2) that the injuries to Earl Barnes did not arise out of and were not in any manner connected with the performance of the contract within the meaning of Article 24 of the contract.

The court adopted the stipulation of the facts submitted by the parties as its findings of fact. It declared that Article 24 was not ambiguous but that it "will be strictly construed", and applying such "strict construction" the court noted the fact that Barnes had temporarily quit applying asbestos and was moving out of the reach of gas from the furnace fluxing at the time when he was struck by the crane and because of that fact the court concluded that the personal injuries of Barnes did not arise out of and were not in any manner connected with the performance of the contract. It was the view of the court that only such injuries as might happen to Barnes when he was in the act of applying asbestos would be covered by the indemnity provisions of Article 24.

The court held that when so strictly construed the contract was not contrary to public policy or void.

In the view taken by the court it found that it was unnecessary to consider other defenses asserted against the set-off. It concluded for the reasons stated, that Alcoa was not entitled to make a deduction for the set-off. Judgment was entered accordingly in favor of the contractor for the full amount of its claim with costs. Alcoa appeals.

It contends that the court erred in applying a strict construction to the unambiguous contract of indemnity embodied in Article 24 and it argues that that contract should be read and applied like contracts generally so as to carry out and not to defeat the intention of the parties and the purpose for which it was executed. It also contends that the contract is valid when so construed and applied and that the personal injuries to Barnes did arise out of and were connected directly or indirectly with the performance of the contract within the fair intendment and meaning of the indemnity provision.

On the trial of the case the parties submitted to the court the following "simplified statement of the facts" in the case of Barnes against Alcoa in the State court.

"On November 24, 1948, at about 11:00 A.M. Earl Barnes was injured. Barnes and a co-worker, as a part of the work being performed by Contractor pursuant to said contract, were engaged in insulating a valve located in the steel girders supporting the roof of the building known as the Remelt Building. A furnace operated by Alcoa was fluxed, which resulted in the release and upward flow of gases to this location. Barnes and his co-worker left their work, which was not completed, because of the fumes. A jury question was presented as to whether a sudden emergency existed, creating a peril which Barnes believed, or had reasonable grounds to believe, endangered his safety. In any event Barnes and his co-worker stopped their work of applying asbestos, pulled up a rope used to raise materials from the floor to their scaffolding, traveled along a steel beam across to the north wall of the building and each slid down a column onto a crane rail. The crane, which was either in operation or commenced operation immediately, moved toward Barnes along the rail and Barnes was caught between the

front truck of the crane and the wall of the building with resultant injuries. The crane was being operated by Alcoa, allegedly for the exclusive benefit of Eichleay Corporation [another contractor] as transportation for a worker. Negligence in the operation of the crane was charged and there was a jury question on this issue. The question of Barnes' contributory negligence was also submitted to the jury."

In addition to the "simplified statement", an extensive and particularized statement of the facts adduced at the trial of the Barnes case was also contained in narrative form in the stipulation submitted. There were also included the following instructions to the jury which were given by the State court in the submission of the case.

Number 18 of the Court's Instructions was as follows:

"It is conceded, and the evidence in this case shows without dispute that on and for some time prior to November 24, 1948 the plaintiff Earl Barnes, was an employee of the Central Asbestos and Supply Company, and that said company had contracted with the defendant to handle the insulation of pipes and other insulating details in and about the manufacturing plant of said defendant, and that at the time of the accident in question the plaintiff, as an employee of such company, was engaged in work pertaining to said contract. The plaintiff, therefore, was what is known under the law as an 'invitee' upon the premises of the defendant at the time of the accident.

"An 'invitee' to a place of business is defined in law as one who comes there, either at the express or implied invitation of the owner or occupant, on business of mutual interest to both, or in connection with the business of the owner.

"It is the duty of the owner or operator of a place of business, toward an invitee, to exercise reasonable care, to see that the premises are reasonably safe for the use of the invitee, and to use reasonable care that conditions shall not be allowed to exist on the premises which imperils the safety of the invitee; but such owner is not the insurer of the safety of the invitee."

Number 20 was as follows:

"It is the claim of plaintiff that immediately prior to the happening of the accident in question he was confronted with a sudden emergency arising from the negligence of the defendant and its employees in suddenly, and without warning, opening the door of one of the defendant's holding furnaces and thus permitting noxious and dangerous gases to emit therefrom so as to subject plaintiff to suffocation, and in his effort to avoid the same he was compelled to descend from the place at which he was working, to the crane track below."

Number 20–A was as follows:

"If you find from the evidence that plaintiff left a position of safety on the scaffolding and descended to a position of danger on the crane rail, and if you further find from the evidence that at the time of said descent to the crane rail the plaintiff knew, or reasonably should have known, that the defendant's crane was operating in the immediate vicinity of the area of plaintiff's descent, and if you further find from the evidence that plaintiff's descent was not occasioned by a sudden emergency, then you are justified in finding the plaintiff was guilty of contributory negligence and you must find for the defendant."

The ruling of the State court on a motion by Alcoa for a new trial in the Barnes case, which included the following declaration of the Court, was also submitted:

"At the close of the evidence offered upon the trial of this case and after both parties had rested the defendant moved for a directed verdict in its favor, which was submitted with-

out argument. At that time, and at the close of the oral arguments upon the submission of the motion for a new trial, the Court stated to counsel that in his view of the record the only theory upon which the case could be submitted to the jury was the existence of a sudden emergency arising out of the operation of defendant's holding furnace and which created a peril which the plaintiff believed, or had reasonable grounds to believe, would endanger his safety or his life if he remained on the scaffold where he had been working, that under the record only such emergency could justify the act of the plaintiff in placing himself upon the crane rail, and that without such excuse his presence upon such crane rail constituted contributory negligence as a matter of law. As to the existence of an emergency there was considerable conflict in the evidence, but it was for the jury to say whether, under the whole record, such emergency actually existed, or that the plaintiff had reasonable grounds for believing that it did exist. The plaintiff was an invitee upon the defendant's premises, and as such the defendant owed him the duty of reasonable care for his safety, although it was not an insurer thereof."

These portions of the record of the case of Barnes against Alcoa sufficiently disclose without going further into details the undisputed situation in which the trial court concluded that the asbestos contractor was not liable for the set-off under the terms of Article 24. It is evident that the ground of decision in favor of the Contractor was that the applicable law required the indemnity provision to be "strictly construed" and that when so construed the indemnity covered injuries caused by Alcoa's negligence to the asbestos contractor's applicators only when they were actually applying asbestos at the moment of injury and therefore did not cover the injuries to Barnes.

We think the decision is erroneous.

The applicable law was that of Pennsylvania because the contract provided that "The law of the Commonwealth of Pennsylvania shall govern the construction and effect of this contract." Pennsylvania was the State in which Alcoa was incorporated and has its principal place of business and there was partial performance of the contract by Alcoa both in Pennsylvania and in Iowa. Under the law of Iowa where this case was tried, this provision of the contract was valid and controlling.

In diversity of citizenship cases, the federal courts, when deciding questions of conflict of laws, must follow the rules prevailing in the states in which they sit. Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. The rule obtains in Iowa that the parties may agree in their contract as to that state whose law shall govern its validity, construction, interpretation and effect. Haverly v. Union Const. Co., 236 Iowa 278, 18 N.W.2d 629, 634–635; Butters v. Olds, 11 Iowa 1, 2; Arnold v. Potter, 22 Iowa 194, 198; Goodwin v. Provident Sav. Life Assur. Soc. of N. Y., 97 Iowa 226, 66 N. W. 157, 160, 32 L.R.A. 473; Johnson v. New York Life Ins. Co., 109 Iowa 708, 78 N.W. 905, 906, 50 L.R.A. 99; Cotnam v. Mass. Mut. Life Ins. Co., 180 Iowa 1141, 162 N.W. 786, 787.

The agreement of the contractor contained in Article 24 of the contract herein to indemnify Alcoa against liability on account of personal injuries to employees of contractor arising out of or in any manner connected with the performance of the contract whether such injuries be caused by the negligence of the owner or otherwise and to defend actions based thereon and pay all expenses was valid and was not against public policy or void under Pennsylvania law, or the law generally. It was recognized to be valid by the parties and by the trial court. See: Tidewater Field Warehouses, Inc. v. Whitaker Co. Inc., 370 Pa. 538, 88 A.2d 796; Siegel Co. v. Philadelphia Record Co., 348 Pa. 245, 35 A.2d 408; Wright v. Sterling Land Co., 157 Pa.Super. 625, 43 A.2d 614; Govero v. Standard Oil Co., 8 Cir., 192 F.2d 962; 42 C.J.S. Indemnity, § 12; 27 Am.

Jur. Indemnity, 9, 15, and supplements thereto.

We agree with the trial court that Article 24 of the contract was not ambiguous.

The situation which the contract, including the indemnity provision, contemplated was that Alcoa would be carrying on its operations in its Remelt Building and the contractor would be sending in men and materials and causing the work of the contract to be done in the building concurrently with Alcoa's operations there. Also, that it might be claimed and established to the satisfaction of a jury that Alcoa's operations were negligent. The operations necessarily entailed risk of injury to everyone in the building within their reach. The indemnity of Article 24 is related to that risk. The plain intent and purport of the words "personal injuries of employees of Contractor arising out of or in any manner connected with the performance of this contract" read in their context is that the Contractor would answer for injuries to its employees whom the Contractor caused to be within reach of such hazards for the purpose of performing its contract, whether caused by the negligence of Alcoa or otherwise. As the contract is not contrary to public policy, illegal or void, and is unambiguous, the duty of the court is to apply it according to the intention of the parties as expressed in its terms. Siegel Co. v. Philadelphia Record Co., supra; Hagarty v. William Akers, Jr., Co., 342 Pa. 236, 20 A.2d 317; First National Bank v. Walker, 289 Pa. 252, 137 A. 257; Tucker v. Leise, 201 Iowa 48, 206 N.W. 258, 259; In re Murdock's Estate, 238 Iowa 898, 29 N.W.2d 177.

The stipulated facts establish that the right and the only right or reason Barnes had to be in Alcoa's Remelt Building in proximity to its operations was to do his part in the performance of the contract. That is the purpose for which the contractor employed him there. There was no abandonment of the purpose when Barnes moved to get out of the way of the dangerous gases until they should be dissipated. Such moving out of their way was simply his response to a condition of work at the place where he was applying asbestos and no more terminated his performance of the contract than going for a drink of water or to answer other calls of nature or to fetch needed tools or appliances or to obtain instructions or to do any of the incidentals that distinguish the working of a man from the working of a machine.

■ The adjudication in the Barnes case also settled against the contractor that Barnes was an invitee in the Alcoa factory at the time he was struck. He was an invitee on the premises solely by reason of his participation in the performance of the contract. It was adjudicated that his being where he was when he was struck was connected with the performance of the contract because he was acting to meet the emergency which confronted him while he was engaged in such performance. As the contractor had been given an opportunity to defend, the judgment in the Barnes action became conclusive upon the contractor as to facts determined therein which are essential to the judgment. Standard Oil Co. v. Robbins Dry Dock & Repair Co., D.C.N.Y., 25 F.2d 339, affirmed 32 F.2d 182; B. Roth Tool Co. v. New Amsterdam Casualty Co., 8 Cir., 161 F. 709; Citizens' Nat. Bank v. City Nat. Bank, 111 Iowa 211, 82 N.W. 464; Hoskins v. Hotel Randolph Co., 203 Iowa 1152, 211 N.W. 423, 65 A.L.R. 1125; 42 C.J.S., Indemnity, § 32, pp. 613, 614. See also, Globe Indemnity Co. of New York v. Banner Grain Co., 8 Cir., 90 F.2d 774; Internationl Indemnity Co. v. Steil, 8 Cir., 30 F.2d 654; Imperial Refining Co. v. Kanotex Refining Co., 8 Cir., 29 F.2d 193.

■ When the ordinary and usual significance is given to the words used in Article 24 and they are considered in relation to the circumstances of the contract and the occurrence of the injuries and damage, it is plain that it was the intention of the parties that the contractor should defend and indemnify Alcoa against the demands made by Barnes for the injuries he suffered in connection with his per-

formance of the contract. Though the spreading of the gases created an emergency that drove him off his scaffold temporarily and onto the track of the traveling crane, he never ceased to be an invitee of Alcoa who came into its factory building and at all times up to the injury remained there to perform the contract. His flight from the gases was an incident of the job arising out of it and connected with it. And so were the injuries he suffered in the flight and the demand for damages he asserted on account of the injuries. To consider Barnes's activity only at the moment of the injury is contrary to the broad and comprehensive terms of the agreement that injuries arising out of or in any manner connected with performance were indemnified against.

Phrases of indemnity contracts similar to those here involved are considered in the following cases which we think tend to support our conclusion: Russell v. Shell Oil Co., 339 Ill.App. 168, 89 N.E.2d 415, 417, ("'resulting from or arising in connection with'"); Hartford Accident & Indemnity Co. v. Worden-Allen Co., 238 Wis. 124, 297 N.W. 436, 438 ("'due to, arising from, or connected with'"); Northern Pac. Ry. Co. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226 ("arising in any manner out of or in any manner connected with"); National Transit Co. v. Davis, 3 Cir., 6 F.2d 729 ("in any manner resulting from, or arising out of"); Govero v. Standard Oil Co., 8 Cir., 192 F. 2d 962, 964 ("arising out of or resulting from").

As the indemnity agreement was valid and the injuries to Barnes and the payments of Alcoa on account of them and the action based on them were squarely within its terms, the judgment to the contrary is reversed. As defenses against Alcoa's asserted set-off were alleged which were not passed on by the trial court, the cause is remanded for further proceedings not inconsistent herewith.

Reversed and remanded.