JAMES SANDON, appellant, v. JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY, appellee.

No. 48325.

(Reported in 62 N.W.2d 247)

JANUARY 12, 1954.

John F. Davis, of Des Moines, for appellant.

Henry & Henry, of Des Moines, for appellee.

LARSON, J.—On June 7, 1949, plaintiff became an agent of defendant-company under a written agreement authorizing him to solicit various types of insurance including group insurance. His writing commissions were based on a schedule allowing percentages on first-year premiums as follows: On the first $1000 of premium, 20%; on the next $4000, 20%; on the next $5000, 15%; on the next $10,000, 12½%; on the next $10,000, 10%; on the next $20,000, 5%; on all over $50,000, 2½%.

Under this agreement he solicited Local Union No. 310, U. R. C. L. P. W. A. C. I. O. of Des Moines, Iowa, and this contact later resulted in the inclusion of the members of this Union (effective July 24, 1950) in a Group Insurance contract already existing upon the members of Local No. 7 of the same labor organization in Akron, Ohio. Though combined under one policy, the two Unions were listed separately and paid premiums monthly thereafter. Plaintiff was designated as "writing agent" for the Local 310 insurance.

In the meantime plaintiff's agency contract had been amended, effective January 1, 1950, by striking out the authority to solicit group insurance. But his right to commission on the Local 310 premiums from July 24, 1950 to June 5, 1951, when he gave up his agency employment, is conceded. Whether it is to be computed under his original contract or a later one is in dispute.

On September 12, 1950, after this insurance upon the members of Local 310 became effective, plaintiff and defendant entered into a "special case agreement", recognizing and pur-

porting to define his right to commission on the Local 310 group insurance he had solicited.

Defendant computes plaintiff's commission upon an interpretation of this "special case agreement" which makes it amount only to $469.30, which has been paid. Plaintiff claims under his original contract and also denies correctness of defendant's interpretation of "the special case agreement." The court held in favor of defendant and directed a verdict denying plaintiff any further compensation. He appeals.

I. We may agree with defendant's contention that the case is ruled by the "special case agreement", though we think the two may be construed together as allowing the same rate or percentages of commission on the amount of premium involved here as would the original agency agreement. The later agreement recognizes plaintiff's right to pay for service he rendered under the original contract although no definite insurance contract had resulted before that contract was amended to withdraw his right to solicit group insurance.

II. We cannot however agree (under this record) with defendant's interpretation of the terms of the later contract. It provides in paragraph 1 that plaintiff's commission, during the continuance of his relationship as writing agent, shall be determined "in accordance with the Commission Schedule contained herein * * * on the total amount of premium paid, as limited in paragraph 2 below * * * for insurance * * * provided under Group Policy No. * * * insuring the members of Local Union No. 310."

Then follow the several brackets of the commission schedule, all identical in language except for the varying percentages on the several amounts making up the "total premium" for the period involved (July 24, 1950 to June 5, 1951).

The language of the brackets, while covering the same divisions of premiums up to $50,000, and the same scale of percentage rates thereon, as did those of the original agency contract, is nevertheless quite different in form. Perhaps different verbiage was required because the premiums of the two Unions were commingled after July 24, 1950. The first bracket will serve for illustration:

"On that portion of the first $1,000 of the total premium under the Policy which is for insurance on members of Local Union No. 310—20%."

Plaintiff would in effect construe these words as if they were rearranged as follows: "On the first $1,000 of that portion of the total premium under the Policy which is for insurance on members of Local Union No. 310—20%.

Defendant reads them literally as printed in the contract and claims that because $81,551.93 of premiums had already been paid by Local Union 7 from June 5, 1950 to July 24, 1950, before the Local 310 insurance began, the first six brackets of the "special case agreement" (covering premiums up to $50,000) were all passed by and ineffective, and that plaintiff's commissions were to be computed under the succeeding brackets providing for 2½% on the next $200,000 above the first $50,000, 1¼% on the next $250,000, and ½% on all over $500,000.

The premium of Local Union 310 for the entire period commencing July 24, 1950, was $34,035.63. Local Union 7 paid in during the same time $567,355.40; adding the $81,551.93 paid by Local 7 before Local 310 became insured, we find the combined premiums of both Unions from June 5, 1950 to June 5, 1951 (when plaintiff's employment ceased), amounted to $682,942.96.

Defendant, in construing the bracket language of the "special case agreement," interprets "total premium" as meaning the combined premiums of both Unions. We think the words may be construed to mean the Local 310 "total premium" of $34,035.63 for the entire period during which Local 310 members were insured before plaintiff's employment terminated— July 24, 1950 to June 5, 1951.

Plaintiff's commission was independent of any premiums except those paid on the insurance he solicited. When the Local 310 insurance became effective, a new policy agreement came into being so far as concerned plaintiff's right to commissions thereafter paid by Local 310. The "special case agreement" treated it as a new policy when it referred in each bracket to "that portion * * * of the total premium * * * which is for insurance on members of Local Union No. 310."

Surely this had no reference to premiums paid by Local

Union 7. The words "total premium" may be reasonably construed to mean the sum of those paid by Local Union 310 upon the insurance plaintiff solicited under his original agency agreement. Plaintiff could properly so understand them under this record. The first six brackets had no place in the contract if defendant knew when it drew the "special case agreement" that they were already passed. Plaintiff generated this business at a time when his contract permitted him to do so and provided a commission scale based alone on the premiums to result from it. No reason appears to justify a conclusion of law that he voluntarily abandoned it.

III. Defendant argues the "special case agreement" is unambiguous, but we think there is latent ambiguity in its provisions when it is read in the light of the "surrounding circumstances."

We are of course mindful of the general rule excluding parol evidence tending to vary or contradict the terms of an unambiguous written instrument, 32 C. J. S., Evidence, section 901; and also of the accompanying ancient distinction between patent and latent ambiguity as bearing on the admissibility of parol evidence to resolve the ambiguity if it be latent. Palmer v. Albee, 50 Iowa 429. We have recently pointed out the modern trend away from this technical distinction. Stoffel v. Stoffel, 241 Iowa 427, 431–433, 41 N.W.2d 16, 14 A. L. R. 2d 891.

The ambiguity of the "special case agreement" here is probably latent even under the old theory. It is sufficient at any rate to justify parol testimony as bearing on the intention and meaning of the parties in executing the instrument and also in executing the amendment of the original contract—the amendment terminating plaintiff's right to solicit group insurance after he had produced a likely prospect and while that prospect was still under consideration.

IV. Defendant argues that because plaintiff made no proffer as to what he intended to prove, he may not now complain because the court excluded the parol evidence. The trial court definitely ruled "that no ambiguity has been established to the satisfaction of the court such as to justify taking parol evidence"; and again: "I think the instrument speaks for itself. Any conversations would be inadmissible."

The rule invoked by defendant is sound to the extent of requiring the party seeking to introduce the evidence to make clear what he expects to prove. But a technical proffer is not always necessary for that purpose. We think here plaintiff brought himself within the doctrine announced in American Express Co. v. Des Moines National Bank, 177 Iowa 478, 494, 152 N.W. 625, citing Mitchell v. Harcourt, 62 Iowa 349 (at page 351), 17 N.W. 581. See also Yocum v. Husted, 185 Iowa 119, 122, 167 N.W. 663. That doctrine as applied here is that where upon the whole record what is sought to be proven is apparent, a technical proffer is not necessary.

The trial court understood that plaintiff sought to show what was said to him at and prior to the signing of the amendment to his original agreement and the "special case agreement." This unquestionably was a relevant circumstance surrounding the execution of those agreements. The court by its ruling indicated a clear understanding of the question involved and, by a flat denial of any ambiguity, held no parol evidence was admissible. There was argument to the court in absence of the jury which further disclosed plaintiff's purpose. We think no technical or formal proffer by plaintiff was necessary under this record.

It follows from what we have said the case must be reversed and it is so ordered.—Reversed.

All JUSTICES concur.

MULRONEY, J., specially concurs.

MULRONEY, J. (specially concurring)—I concur in the reversal. I agree with the majority opinion that the "special case agreement" is ambiguous. This contract was drawn by defendant. I feel the opinion should emphasize this fact and apply the rule that an ambiguous contract will be construed against the drawer. I think it should also state that unless on retrial there is testimony to support defendant's interpretation, the court should interpret it in favor of the plaintiff.