ECONOMY HOG & CATTLE POWDER Co., Appellant, v. AETNA LIFE INSURANCE Co., PAUL FERGUSON, Administrator, and H. E. ROSS, Appellees.

No. 44919.

1124

February 13, 1940.

Barnes & Howard, for appellant.

Stipe, Davidson & Davidson, Wilson & Wilson, and Paul Ferguson, for appellees.

RICHARDS, J.—The plaintiff, at the time of the transactions that generated this controversy, was a corporation doing an annual business of $400,000. James J. Doty was its president and manager. He owned 80 per cent of the stock. The remainder was held by Arthur B. Nye and F. P. Nye, secretary and treasurer respectively of the corporation. Defendant Aetna Life Insurance Company (hereinafter called the Aetna) was a foreign corporation. It had duly appointed A. G. Honett as agent for the transaction of its authorized life insurance busi-

ness in Iowa. Honett, originally a defendant, died, and his administrator Paul Ferguson was substituted. On May 12, 1931, one of the regular forms furnished by the Aetna to its agents for use in taking applications for life insurance was brought to plaintiff's place of business in Shenandoah by the agent Honett. It comprised four pages and was in a partially completed condition. On the third page were questions the answers to which were to be made to and written in by the Aetna's medical examiner. On page 4 was a form for his report. On May 6, 1931, the medical examiner had met the requirements of page 3, by writing in the answers of Doty on whose life the insurance was to be written, and on the same day had made his medical report on page 4. After Honett's arrival at plaintiff's business place on May 12, 1931, a conference naturally ensued between him and Doty and the two Nyes, as the intended beneficiary of the proposed insurance was the plaintiff corporation, and the question of payment of the premium by the corporation was for Doty and the Nyes as its executive officers to decide. After ascertaining from Honett the amount of the premium and some other matters of detail the three officers of the corporation, according to their testimony, concluded that the proposed insurance should be applied for and that the corporation would pay the premium. Honett then wrote upon page 2 of the form answers to the questions there appearing and Doty attached his signature at the bottom of the page as the applicant for the insurance. The plaintiff corporation signed on the same page a statement that the premiums were to be paid from its funds. In the course of this transaction of May 12, according to plaintiff's witnesses, Honett stated that plaintiff had better prepay the premium as otherwise the insurance would not become effective on that date, and also stated that he thought the application "would go through" if the payment went in with it. There was also this further testimony; that Honett, addressing Doty and the Nyes, stated that they "could give us a check for so much money, something over five hundred dollars, and we can carry the rest by note;" that after some discussion plaintiff's officers decided to pay the premium in advance, and settled the matter with Honett by splitting the premium into a check for $526.50 and two notes for $450 each, due respectively October 1 and November 1, 1931,

all payable to Honett, the aggregate being the amount of the first annual premium. When the conference ended Honett took away with him the check, notes, and application. The check was paid by the Des Moines bank on which it was drawn on May 15, 1931. During the next day, in Des Moines, Honett personally delivered the application to Martin L. Seltzer, the Aetna's general agent for Iowa, and at the same time turned over to Seltzer $222.60 in way of premium on the contemplated policy. After the application reached the general offices in Hartford, Connecticut, the Aetna declined to issue a policy. On June 24, 1931, Seltzer so advised Honett by letter in which he also enclosed a check for $222.60 payable to plaintiff. This check never reached plaintiff. In October, 1931, the Aetna stopped payment thereon and delivered to plaintiff a duplicate without prejudice to the Aetna's or plaintiff's then rights. On July 10, 1931, defendant Ross, acting as agent for one Cox, loaned Honett $350 by crediting that amount to Honett's account in the bank in which Ross was the managing officer, and taking from Honett a promissory note for $350 payable to Cox. As a part of this transaction Ross acquired from Honett by endorsement to Cox, as collateral security for the $350 note, the $450 note already mentioned that matured on November 1, 1931. At the time Ross thus acquired the $450 note he had received from Honett the following information; that Honett had gotten Doty's application for life insurance; that the premium was to be paid by plaintiff; that plaintiff had prepaid the premium, partly in cash, partly in notes; that one of such notes was the $450 note that was being endorsed to Cox. Ross also knew at the time that the application had not been approved or accepted, and in his own language as a witness, he "thought it might be turned down." He disclaimed, however, any knowledge that the "turning down" had become a reality. The parties concede that any knowledge on the part of Ross or any notice to him of any facts should be imputed to his principal Cox.

Plaintiff sought a decree cancelling the two notes as against all defendants, and a judgment against the Aetna and Honett for the amount of the $526.50 check with interest less the $222.60 paid by the Aetna's duplicate check. Defendant Ross as assignee of the Cox $350 note counterclaimed against plain-

tiff upon the $450 note. The district court dismissed plaintiff's petition in toto and entered judgment in favor of Ross against plaintiff for the amount due upon the $350.00 note. Plaintiff has appealed.

Plaintiff-appellant's first proposition is that, instead of entering judgment on the $450 note on which Ross counterclaimed, the trial court should have decreed the note's cancellation. The reasoning of plaintiff is as follows: Section 9476 [§16], Code 1935, is to the effect that, "Every contract on a negotiable instrument is *incomplete* and *revocable* until delivery of the instrument for the *purpose* of *giving effect* thereto" and further provides that, "As between immediate parties, and as regards a *remote* party *other* than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; and in such case the delivery *may be shown* to have been *conditional* or for a special purpose only, and *not* for the purpose of *transferring* the *property* in the instrument." Plaintiff also points to section 9515 [§55], Code 1935, providing that, "The *title* of a person who negotiates an instrument is *defective* within the meaning of this chapter when * * * he negotiates it *in breach of faith,* or under such circumstances as amount to a *fraud.*" Plaintiff urges that under section 9515 Honett's title was defective when he negotiated the note to Cox; that the title of Cox rose no higher than the title of Honett because Cox had notice of all the facts on account of which there was an infirmity in the instrument and a defect in the title of the person negotiating the instrument. Having notice and knowledge of these facts, plaintiff urges that Cox can not say in avoidance that he was a holder in due course as defined in section 9512 [§52], Code 1935. Consequently, according to plaintiff, the contract on the note being still incomplete and revocable, it may be defensively shown, as between plaintiff and Cox and now his assignee Ross, (and according to plaintiff it has been shown) that the delivery of the note by plaintiff to Honett was conditional or for a specified purpose only, and not for the purpose of transferring the property in the instrument. We are of the opinion, in view of these statutes and the following authorities, that plaintiff's proposition is sound provided the plaintiff's evidence together with the con-

ceded facts in the record establish the truth of the factual matters as plaintiff claims them to be. Anthon State Bank v. Bernard, 198 Iowa 1345, 201 N. W. 59; Todd v. State Bank, 182 Iowa 276, 165 N. W. 593; Home State Bank v. Martin, 196 Iowa 1092, 195 N. W. 977.

Ross contends that plaintiff's proposition is not sustained by the facts shown in the record. The claim is that the check and notes were delivered to Honett not for payment of the premium to the Aetna, but for "numerous purposes," in that, says Ross, Doty and the Nyes had "engaged" Honett to assist them in a "campaign" to obtain additional insurance on the life of Doty, and in that the check and notes were turned over to Honett to use in this "campaign" wherever the insurance might be obtained. In taking this position Ross relies on evidence to the effect that some years previously Doty had acquired several policies of insurance on his life through Honett whose business during all this period was that of an insurance agent. But in these instances Honett was acting as an insurance agent representing the companies that issued the policies, and that is all that is shown. Ross also points out that Honett was contacting other companies than the Aetna to ascertain whether a $50,000 policy could be procured from any of them, and was submitting to Doty their propositions if any. But all this falls far short of establishing that the check and notes were delivered to Honett for "numerous purposes" other than payment of premium on the Aetna policy. There is nothing in the way of testimony that the delivery of the check and notes was associated with any so-called "numerous purposes." On the contrary the delivery was made at the time the thing discussed and in all parties' minds was the application for an Aetna policy. To that alone the transaction pertained, and it was all one whole transaction of which the delivering of the check and notes was a definite part. It appears to us that the matters Ross affirms as facts are no more than unsustained surmises.

Ross further claims that Doty and plaintiff have made admissions that only $222.60 was paid to Honett for the premium on the contemplated Aetna policy. For proof Ross relies on what appeared on page 2 of the application at the time it was offered in evidence. On that page were two questions that pertained to the premium. For convenience we will designate them

as No. 1 and No. 2. No. 1 was "What settlement has been made?" The answer that now appears on page 2 is this, "Cash —222.60." Question No. 2 was "Payable how often?" The answer now appearing is "Quarterly." Ross claims these now appearing answers constitute the alleged admissions. On the trial plaintiff insisted that the application had been altered since it was last in the possession of plaintiff or Doty. The testimony of Doty and the Nyes was to the effect that when the application was taken away from their place of business by Honett on May 12, 1931, the answer that Honett had written on page 2 to Question No. 1 was the word "Cash" and nothing more, and that the "222.60" that now follows the word "Cash" did not appear. They also testified that at that time Honett had written on page 2 the word "annually" in answer to Question No. 2.

That page 2 of the application was materially altered at some time after the transaction of May 12, 1931, without knowledge or consent of plaintiff or Doty, was clearly established on the trial. Beyond controversy, and admitted by the only one of defendant's witnesses who was examined on the subject, whatever Honett wrote on page 2 in answer to Question No. 2 was subsequently erased, and the word "Quarterly" that now appears was inserted. Plaintiff and Doty first acquired knowledge thereof after this controversy arose. With respect to the other claimed alteration, the inserting of "222.60" following the word "Cash", the testimony of plaintiff's witnesses is to such extent corroborated by the record and circumstances therein shown that we deem it to be the truth. The original application is before us. Comparison of the appearance of the written "222.60" with the appearance of what concededly was written by Honett on page 2 on May 12, 1931, the relatedness of the admitted alteration to the disputed one, the quality of conduct and disposition to deceive others in respect to the entrusted property displayed by Honett who had the possession of the application until May 16, 1931, the fact that it would be he who would profit though wrongfully by inserting "222.60", and the unreasonableness that the check and notes delivered to Honett with the application were something else than the premium payment, are among the corroborating matters that have been given consideration. It is also claimed by Ross that the "binding receipt" that defendants offered in evidence tends to show the

same admission on part of plaintiff. This receipt, signed by Honett, shows $222.60 paid by plaintiff. But we fail to see its materiality. The Aetna acquired possession of this receipt from Honett. The only reasonable conclusion the record warrants is that it never was in the hands of plaintiff or Doty. We are unable to find from the evidence that the alleged admissions were made. Our conclusion is that plaintiff's first proposition is sound and is supported by a preponderance of the evidence, and that the court erred in entering judgment on the counterclaim and in not cancelling the $450 note that Ross held.

Plaintiff's second proposition is that the court erred in dismissing the petition as against the defendant administrator. The latter filed no brief. Examining the record we find he made objections to the competency of the witnesses Doty and the Nyes. Determining whether the administrator's cross-examination was such that he waived the objection is not needful because aside from the testimony of those witnesses the evidence clearly establishes Honett's liability for the unaccounted part of the $526.50 check and warrants a cancellation of the two $450 notes as against the administrator of his estate. The court erred in not according all that relief to plaintiff.

Plaintiff's third proposition is that the dismissal of the petition as against the Aetna was erroneous in that, the Aetna through its agent having received the amount of the check, it is liable to plaintiff therefor, less the $222.60 it returned. The record establishes the fact that Honett had authority to collect the premium on behalf of the Aetna, his principal. The claim the Aetna makes is that only $222.60 was paid to Honett upon the premium. The defense of waiver is also predicated by the Aetna on the same alleged facts. But as already shown the evidence does not sustain either contention. The proceeds of the check were in part converted while in the authorized possession of the Aetna's agent. The conversion was the act of the Aetna's agent for which it as principal is liable. There was error in failure to enter judgment against the principal as well as the agent for the amount of the conversion. The judgment and decree is reversed and the case remanded for proceedings consistent with this opinion.—Reversed and remanded.

HAMILTON, C. J., and SAGER, STIGER, MITCHELL, HALE, and OLIVER, JJ., concur.