STEVE SHORT et ux., Appellants, v. LILY ANDERSON et al., Appellees.

No. 46147.

APRIL 6, 1943.

R. B. Hawkins, of Leon, and O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, all of Osceola, for appellants.

Grant L. Hayes and Frank F. Wilson, both of Mount Ayr, for appellees.

SMITH, J.—Plaintiff-appellants, Steve Short and Cora Short, are husband and wife; Cora Short and defendant-appellee, Lily Anderson, are sisters, and George W. Hall, defendant on cross-petition, was their brother. He died after the trial below and before appeal, and R. B. Hawkins, administrator of his estate, has been substituted as defendant on cross-petition. Defendant-appellee, Lily Anderson, is also named as defendant in her capac-

240

ity as administratrix of the estate of her husband, H. S. Anderson, who died in 1939. We shall refer to her in her dual capacity as "defendant-appellees."

The pleadings cover some fifty pages of the printed abstract. The issues will be stated, so far as necessary, as we proceed with the opinion.

George W. Hall never married. On and prior to January 7, 1921, he lived in Oregon, while his sister, defendant-appellee Lily Anderson, and her husband, lived on a farm in Ringgold County, Iowa. On or about that date Hall loaned them $3,500 and took a mortgage on their farm to secure same. About June 1, 1923, he came back to Iowa and lived at the Anderson home until 1936, except for an interval from 1927 to 1929 when he was again in Oregon. From the beginning it was orally agreed he was to pay a reasonable charge for board, room, and care.

Defendant-appellees claim he never paid anything for these services during all that time and that the $3,500 indebtedness is paid, partly in cash and partly by those services.

On or about May 7, 1935, a written agreement was entered into between H. S. Anderson and Hall by the terms of which Hall was to pay $25 per month for his board and room "for the time that the party of the second part, George W. Hall, has made his home with the party of the first part." It also provided for "a reasonable allowance, for any extra services rendered * * * during any illness or other disability * * *."

Thereafter, on November 13th of the same year (1935), the note and mortgage sued on by plaintiffs were executed by Mr. and Mrs. Anderson to Hall. They represented the same indebtedness for which the note and mortgage of January 7, 1921, were given. The earlier mortgage was not released of record. Defendant-appellees claim this new note and mortgage were made with the understanding that the agreement of May 7, 1935, for board and room and extra services was to stand; that by oversight, credits amounting to $1,100 which were endorsed on the original note of January 7, 1921, were not allowed in drawing the new note and mortgage; and that the new papers were made for the purpose of keeping the original debt from being barred by the statute of limitations, and in order that a final settlement be-

tween the parties could be made at a later date when the real amount due would be determined.

Plaintiff-appellants deny all but the execution of the new note and mortgage, urge the incompetence of any parol evidence to vary the terms of those instruments, and claim the execution of the new papers in legal effect constituted a settlement between the parties thereto which now precludes any claim by defendant-appellees for Mr. Hall's board and care under the agreement of May 7, 1935.

Hall left the Anderson home in 1936 and went to live with plaintiff-appellants. On October 23, 1937, he and they made a written agreement for his care and support for life under which he gave them in payment a tract of land in Oregon (later sold for $2,400), a $3,000 mortgage of one George E. Anderson, son of defendant-appellees (which has since been paid in full), and the note and mortgage in suit, which he assigned to them the same date. Plaintiff-appellants claim to be holders of this paper in due course.

It appears that on or about August 24, 1939, H. S. Anderson conveyed by warranty deed to Mrs. Anderson, defendant-appellee, the land covered by this mortgage. Said deed recited a consideration of one dollar and provided that the premises were free from encumbrances "except one mortgage." Plaintiff-appellants claim this referred to the $3,500 mortgage and that by accepting it the grantee estopped herself from denying and contesting the validity and existence of said mortgage and from making any defense to this suit. Plaintiff-appellants also contend that any claim of defendant-appellees against Hall for board prior to September 1, 1929, was in 1935 barred by the statute of limitations and that the agreement of May 7, 1935, did not revive it.

We shall attempt, as we proceed, to dispose of these various questions of law and fact so far as necessary to a decision of the case.

■ I. Plaintiff-appellants, by pleading and in argument, claim they became holders in due course of the note and mortgage sued on.

Section 9512, Iowa Code 1939, states what constitutes a "holder in due course." Among other requirements, the holder

must have taken the instrument "in good faith and for value," and must have "had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Mrs. Short denies having had knowledge of the transactions between Hall and the Andersons when the assignment of note and mortgage was made to her and her husband. George Anderson testifies that he talked it over with plaintiff-appellant Steve Short in the spring of 1937:

"I talked to Steve Short, one of the plaintiffs in this case, with reference to the indebtedness of George Hall, to my father and mother. That was in the spring of 1937, after he went there the summer before. * * * I told him I thought we could get Mr. Hall and my parents together concerning a settlement, and he thought so, too, and he agreed to bring him up and we would try and get them together * * *. The indebtedness I was talking about was concerning Mr. William Hall's board."

This affirmative evidence is uncontradicted in the record. Furthermore, it is consistent with the relationship of the parties and the circumstances generally. The record does not disclose much as to the visiting back and forth of the Short and Anderson families but there is no evidence of any unfriendliness.

Plaintiff-appellant Short was called as a witness by defendant-appellees. On cross-examination he indicates his visiting at the Anderson place while Hall was there was confined to Sundays. Mrs. Short testified the families lived quite far apart and she visited there about once a year while Hall was there.

On cross-examination by his own attorney Mr. Short testifies that when the papers between the Shorts and Hall were drawn "he [Hall] told me he thought—he figured his interest and what work he done there would a good deal over-pay them." Mrs. Short was present. It was evidently the subject of discussion. This was some months after the conversation between Short and George Anderson we have already referred to.

There may be some significance also in the fact, of which plaintiff-appellants had constructive notice at least, that the original mortgage remained unsatisfied of record.

On the question of consideration it is clear the assignment

of the note and mortgage to plaintiff-appellants was in part for a past and in part for a prospective consideration. It is undisputed also that plaintiff-appellants received other property for the same past and prospective board and room and care. The record discloses that the other property received by them netted them about $5,850.

On the whole record the facts are not seriously in dispute on this question of notice. We are convinced by the uncontradicted evidence of the prior conversation between George Anderson and plaintiff-appellant Steve Short, and by the testimony of the latter as to Hall's statement when the note and mortgage were assigned, and by the relationship of the parties and the circumstances and nature of the transaction, that plaintiff-appellants were not holders in due course.

They had actual knowledge that there was some infirmity or defect in the paper. Section 9516, Code of Iowa, 1939. They had "actual knowledge of suspicious circumstances, coupled with the means of readily informing" themselves of the facts, and they "willfully" abstained "from making inquiries." Hess v. Iowa Bankers Mtg. Co., 198 Iowa 1365, 1369, 201 N. W. 91, 92. (Citing cases.) They had knowledge of the unsettled condition of the financial account between mortgagors and mortgagee, and knowing this, they secured transfer of this and all the rest of mortgagee's property in exchange for a past consideration and promised future services. The relationship of the parties makes it certain that they could easily have known the facts if they did not already know them.

The trial court properly held they were not "holders in due course." See, as bearing on this decision, Anthon State Bank v. Bernard, 194 Iowa 1090, 191 N. W. 283; Economy Hog & Cattle Powder Co. v. Aetna Life Ins. Co., 227 Iowa 1123, 290 N. W. 82.

II. Plaintiff-appellants invoke the "parol evidence rule" to the effect that defendant-appellees may not show the circumstances and conditions attending the execution of the note and mortgage sued on for the purpose of varying their terms. There is no necessity for repeating here the respective claims of the parties on this point. The testimony of the witness Hawk, who drew both the agreement of May 7, 1935, and the note and mortgage some six months later, and of the witness Ryan, who

was present on the earlier occasion, if admissible, clearly show the purpose of the new instruments was to keep alive the respective rights of the parties so as to permit a later adjustment of their accounts. There was no new indebtedness created.

The original note and mortgage were not canceled. The new paper had no consideration except as represented by the old. The parties had already, by the written agreement of May 7th, established the mortgagor's right to an offset against the original indebtedness.

We are convinced the evidence falls squarely within the exception to the "parol evidence rule" which permits parol evidence of conditional delivery of an instrument. The note and mortgage are unilateral. They do not reveal what was the obligation of the payee-mortgagee. That is clearly the subject of parol evidence.

This court has consistently affirmed this exception to the rule. See Kruse v. Wickham, 228 Iowa 617, 292 N. W. 518; In re Estate of Simplot, 215 Iowa 578, 246 N. W. 396; Sutton v. Griebel, 118 Iowa 78, 91 N. W. 825.

III. What we have said in the preceding division disposes of plaintiff-appellants' contention that the execution of the note and mortgage sued on constituted a settlement between the parties and an acknowledgment by the mortgagors of the amount due from them to that date. The evidence we have held admissible reveals the contrary.

The case of Munn v. Town of Drakesville, 226 Iowa 1040, 285 N. W. 644, cited by plaintiff-appellants is not in point. There was involved in it a dispute touching the subject matter of a compromise or settlement. There was an acceptance by plaintiff of a payment which the court held was in settlement of a previous dispute. There is no evidence here that the new note and mortgage were intended by the parties as any settlement. It appears rather the intention was to preserve rights of all parties until some future adjustment would be made.

IV. Plaintiff-appellants argue that defendant-appellees' claim against Hall for the years preceding 1929 was barred by the statute of limitations and not revived by the written agreement of May 7, 1935. There are several answers to this argu-

ment. The claim for those years was being asserted only as an offset to their indebtedness to Hall which existed contemporaneously with it. It was not barred, for that purpose, in any event. Section 11019, Code of Iowa, 1939.

Furthermore, if it be held the claim for services prior to 1929 was barred by the statute, such claim could, nevertheless, very properly constitute a consideration for a new contract. Spilde v. Johnson, 132 Iowa 484, 109 N. W. 1023, 8 L. R. A., N. S., 439, 119 Am. St. Rep. 578; 12 Am. Jur., Contracts, 596, section 101.

As a matter of fact, we are unable to see any reason why the contract of May 7, 1935, did not comply strictly with our statute providing for a revival "by an admission in writing, signed by the party to be charged, that the debt is unpaid, or by a like new promise to pay the same." Section 11018, Code of Iowa, 1939.

V. We cannot follow plaintiff-appellants' contention that by accepting from her husband a deed of the mortgaged premises free from encumbrance "except one mortgage" she estopped herself from making defense to this suit to foreclose the mortgage. Plaintiff-appellants took assignment of the mortgage on October 23, 1937. Whatever obligations they assumed in consideration for it were assumed at that time. The conveyance to defendant-appellee, Lily Anderson, from her husband was almost two years later. There is no showing or claim that plaintiff-appellants were induced by that deed to change their position in any way, even if we were to accept their argument that the acceptance of the deed was in effect an acknowledgment by her that anything was due on the mortgage. This fundamental basis for estoppel is lacking and plaintiff-appellants' contention cannot be upheld.

Because they urge it, however, with all seriousness, we have examined the authorities they cite that appear to support their argument. We find the cited cases all involve, in effect, controversies between grantor and grantee. As said by Justice Evans in one of these cases:

"It is well settled that, *as between a grantor and grantee* in a deed wherein conveyance is made subject to a mortgage,

the mortgaged property, by agreement of the parties, becomes the primary source out of which the debt is to be paid.'' (Italics ours.) Truro Savings Bank v. Foster, 206 Iowa 432, 434, 220 N. W. 20, 21.

The doctrine of these cases has no application here.

VI. As the case is triable de novo it becomes our duty to determine whether a correct decision has been reached upon the record and under the conclusions of law we have announced. We have reviewed the evidence and agree with the trial court that there was nothing due from defendant-appellees on the note and mortgage after allowing them credit for $25 per month for the regular services rendered plus $500 for additional services, as provided by their written contract of May 7, 1935.

If, as could well be held, interest on the original debt was paid in cash up to November 13, 1935, in addition to the three payments aggregating $1,100 endorsed on the original note, there might be found a balance due defendant-appellees against the mortgagee, Mr. Hall, or his administrator, the substituted defendant on cross-petition. But defendant-appellees have not appealed. We need not concern ourselves with that accounting.

On the whole record we find the trial court has reached a correct solution of a difficult family controversy.

As we read the evidence we must keep in mind the background of relationship, age, and education of the parties. George W. Hall was at the time of the trial eighty-four years old and he had never learned to read and write. He kept no bank account and insisted on payments in cash. His sisters were no longer young. Memories grow dim with advancing years and there is abundant evidence in the record that these parties had not escaped this inexorable law of nature. Whatever contradictions appear in their testimony may be ascribed to that fact.

We think the decision below was right and it is affirmed.— Affirmed.

All JUSTICES concur.