NUTRENA MILLS, INC., a corporation, Plaintiff,

v.

J. Paul YODER and Lowell Yoder, Defendants.

Civ. No. 634.

United States District Court
N. D. Iowa,
Cedar Rapids Division.

Sept. 30, 1960.

Charles A. Hastings and Wayne C. Collins, of Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for plaintiff.

A. C. Cahill, of Messer, Hamilton & Cahill, Iowa City, Iowa, for defendants.

GRAVEN, District Judge.

The plaintiff is a corporation duly organized and existing under the laws of the State of Kansas and was and is authorized to do business in the State of Iowa. The defendants are residents of Iowa County, Iowa, and are citizens of the State of Iowa. In this action the plaintiff seeks to recover money allegedly owing to it by both of the defendants for advancements made by it to finance turkey raising operations. The plaintiff also seeks to recover money allegedly owing to it by the defendant, J. Paul Yoder, for advancements made by it to finance the raising of hogs. The advancements were made pursuant to certain written contracts. The defendants executed promissory notes for the advancements. The amounts sought to be recovered by the plaintiff are the amounts unpaid on those notes. The defendants have counterclaimed against the plaintiff. They allege that the plaintiff breached the contracts in question by prematurely terminating the defendants' credit and refusing to deliver to them sufficient feed to mature defendants' turkeys and hogs. The damages claimed by them are in excess of the amount claimed by the plaintiff. The defendants made due and timely demand for a jury trial. The plaintiff made a motion for summary judgment, which motion is here being considered. The plaintiff took extensive discovery depositions of the defendants. The defendants took extensive discovery depositions of those connected with the plaintiff who had to do with the transactions. The depositions taken by the parties were to be considered by the Court in passing upon the motion. Because of those depositions, the Court has before it in ruling on the motion probably all the evidence that would be presented at the trial of the case. The limitations to be observed by the Court in ruling upon motions for summary judgment were noted by this Court in the cases of United States v. Daubendiek, D.C.1959, 25 F.R.D. 50, and United States v. Tholen, D.C.1960, 186 F.Supp. 346.

The defendant, J. Paul Yoder, is a farmer who has been engaged in the raising of turkeys since 1934. He has also been engaged in the raising of hogs. The defendant Lowell Yoder is his son. It is the practice of the plaintiff to make available to turkey raisers various credit arrangements for the financing of their turkey programs. Under these arrangements, the growers become obligated to purchase feed for their turkeys from the plaintiff. The plaintiff and the defendant, J. Paul Yoder, had entered into such turkey finance contracts during the 1955 and 1956 turkey seasons. The present action principally concerns advances made by the plaintiff under turkey finance contracts which were entered into for the 1957 turkey season. The complaint is in three counts. Count I states a cause of action against the defendant, J. Paul Yoder, individually for certain advances made pursuant to a turkey finance contract between the plaintiff and

that defendant. Count II states a cause of action against the partnership of J. Paul Yoder and Son as well as against J. Paul Yoder individually and Lowell Yoder individually for certain advances made pursuant to a turkey finance contract between the plaintiff and the partnership of J. Paul Yoder and Son. Count III states a cause of action against the defendant, J. Paul Yoder, individually for advances made to that defendant pursuant to a hog financing contract which he entered into with Maas Grain and Feed of Iowa City, Iowa, which contract has been assigned to the plaintiff.

The two turkey finance contracts involved herein are on printed forms. The forms are identical except as to the filled-in items. The contract entered into with J. Paul Yoder individually provided that the plaintiff was to furnish financial assistance to that defendant so as to assist him in the raising of 15,000 turkeys for the 1957 turkey season. The writing provided that the total amount of financial assistance to be extended was not to exceed $42,750. This figure was, according to the terms of the written agreement, to be allocated as follows: ten cents per bird for insurance; ten cents per bird for supplies; eighty-five cents apiece for the 15,000 poults; and thirty pounds of feed per bird computed at six cents a pound. The contract between the plaintiff and J. Paul Yoder and Son provided for financial assistance in the raising of 2,500 turkeys during the 1957 season. The writing provided that the credit extended was not to exceed $7,125 and the per bird allowances were the same as those in the contract just discussed. The other material provisions of the two contracts are identical. Each provided that the defendants were to purchase only Nutrena feeds during the season covered by the contract. Poults and supplies could be purchased from anyone the defendants chose. Upon the receipt of any poults, supplies, insurance, or feed purchased, the defendants were to execute and deliver to the seller thereof a promissory note on one of the plaintiff's forms for the amount of the purchase price. The defendants were to execute to plaintiff, when so requested by that corporation, first chattel mortgages on their turkeys, feed, or supplies. The defendants were to allow the plaintiff's employees to inspect their turkeys whenever the plaintiff wished to have them do so. All sums owing from defendants to the plaintiff, whether evidenced by promissory notes or not, were to be payable on or before January 15, 1958, with interest. Both contracts specifically provide that "this contract contains all of the agreements between the parties hereto in connection with this transaction and cannot be varied orally." The contract with J. Paul Yoder individually is dated November 8, 1956, and is signed by J. Paul Yoder. The contract with J. Paul Yoder and Son is dated December 13, 1956, and is signed "J. Paul Yoder and Son by J. Paul Yoder." Both contracts provide that they do not become effective until accepted at the offices of the plaintiff company. The former contract bears the signature of Nutrena credit officer, G. E. Turner, dated January 23, 1957. The latter contract bears the signature of Mr. Turner dated January 29, 1957. It is assumed that these are the dates on which the Nutrena office formally accepted the contracts.

As previously mentioned, the third contract involved in this action was entered into between the defendant, J. Paul Yoder, and Maas Grain and Feed, a Nutrena dealer in Iowa City, Iowa. It provides that the defendant, J. Paul Yoder, was to be given credit by Maas Grain and Feed for the purchase of 25,000 pounds of Nutrena feeds for twenty sows and two hundred thirty pigs. The type of feed is specified but no dollar limitations are provided except that the contract is limited to 25,000 pounds of feed at "dealer's price." The contract provides that with each purchase of feed, the buyer was to execute and deliver to Maas Grain and Feed a promissory note for the full purchase price. The contract, signed by J. Paul Yoder and an officer of Maas Grain and Feed, is dated April 29, 1957.

It was assigned to the plaintiff by Maas on May 1, 1957. The contract provides that the written contract contains all of the agreements between the parties to that contract relative to the transactions described in said contract.

Plaintiff alleges that it has advanced $54,432.17 to the defendant, J. Paul Yoder, pursuant to their turkey finance contract. Promissory notes have been given as evidence of the obligation as provided in the written contract. The interest on these notes at maturity (January 15, 1958) amounted to $2,134.34 thus making a total of $56,566.51. The total amount received in payment on these notes from the defendant, J. Paul Yoder, is $39,805.77, leaving a balance yet owing of $16,760.74 plus interest from maturity. The advances by the plaintiff to J. Paul Yoder and Son under their turkey finance contract totalled, including interest up to maturity, $10,134.99. These advancements are all evidenced by promissory notes and the unpaid balance thereon is $1,964.53 plus interest from maturity. One note has been given by the defendant, J. Paul Yoder, to secure advances made to him under the hog raising contract with Maas Grain and Feed. That note was executed after the contract had been assigned to the plaintiff and was made payable to the plaintiff for the amount of $798.50 on demand.

All notes executed under the three contracts previously described provide for reasonable attorney fees for collection after maturity. The amount of damages prayed for by the plaintiff in this action is the unpaid balance on all notes of the defendants held by it, plus interest, plus reasonable attorney fees.

In his deposition the defendant, J. Paul Yoder, admits the execution and delivery of the three written finance contracts and each and every one of the many notes involved. The defendant maintains, however, that the turkey finance contracts under which all but one of these notes were delivered, were delivered to the plaintiff on the express condition, agreed to orally, that the plaintiff was to furnish to the defendants sufficient feed to completely feed out the defendants' turkeys for the 1957 season. The defendants allege a breach of this condition by the plaintiff in that the latter refused to make any more feed available to the defendants after October 15, 1957, thus causing an extensive loss in the marketing of the birds.

The showing of the defendants was that the turkey finance contracts and the notes representing the advances made thereunder were conditionally delivered. While no similar showing was made in connection with the hog contract and the note executed in connection therewith, the defendants allege in their counterclaim that they were conditionally delivered and it will be assumed by the Court for the purpose of this motion that the defendants could make such showing.

▆ The instant case is principally concerned with an application of the Iowa parol evidence rule. This rule, rather than being a rule of evidence, is a rule of substantive law. Fidelity Savings Bank v. Wormhoudt Lumber Co., Iowa 1960, 104 N.W.2d 462, 465; Williams v. Williams, Iowa 1959, 100 N.W. 2d 185, 188; Martin v. Stewart Motor Sales, 1955, 247 Iowa 204, 73 N.W.2d 1, 4. See Loth and Jennings, The Parol Evidence Rule in Iowa, 20 Iowa L.Rev. 713, 717 (1935). Since jurisdiction in this case is based upon diversity of citizenship, the doctrine of Erie R. R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is applicable. Under the doctrine of that case the Iowa parol evidence rule governs. The Court of Appeals for this circuit has held that when the only evidence relied upon to create a factual dispute in opposition to a motion for summary judgment is an oral agreement which is inoperative because of the parol evidence rule, no genuine factual dispute may be said to exist and summary judgment should be granted. Booth v. Barber Transportation Co., 8 Cir., 1958, 256 F.2d 927, 929. See also Ford v. Luria Steel & Trading Corp., 8 Cir., 1951, 192 F.2d 880, 882. In the in-

stant case the terms of the written contracts are clear and unambiguous. There is no dispute as to the amounts advanced under the contracts. Thus, there would be no genuine factual dispute if the condition upon which the defendants allege the contracts were delivered may not be established by parol evidence. This is true both in regard to plaintiff's claims and defendants' counterclaim.

As defined in the Restatement of Contracts, Sec. 237 (1932), the parol evidence rule "makes inoperative to add to or vary * * * [an integrated written] agreement all contemporaneous oral agreements relating to the same subject matter; and also, unless the integration is void, or voidable and avoided, all prior oral or written agreements relating thereto." The Restatement's definition has been approved by the Iowa Court in Weik v. Ace Rents, Inc., 1958, 249 Iowa 510, 87 N.W.2d 314, 318, and City of Des Moines v. City of West Des Moines, 1953, 244 Iowa 310, 56 N.W.2d 904, 906. The Iowa Supreme Court has consistently maintained that the general rule is that in the absence of fraud, accident, or mistake, parol evidence is not admissible to vary, add to, or contradict the express terms of a written contract. Williams v. Williams, Iowa 1959, 100 N.W.2d 185; Stebens v. Wilkinson, 1957, 249 Iowa 365, 87 N.W.2d 16, 71 A.L.R.2d 277; Furleigh v. Dawson, 1954, 245 Iowa 359, 62 N.W.2d 174; Northern Trust Co. v. Anderson, 1935, 222 Iowa 590, 262 N.W. 529, 271 N.W. 192. So, too, where the law makes an implication in the absence of an express provision, such implication becomes a part of the contract and parol evidence is not admissible to vary it. Thus, a blank indorsement to a negotiable instrument results in certain obligations which cannot be avoided by alleging a contemporaneous oral contract which would vary those obligations. Versteeg v. Hoeven, 1931, 214 Iowa 92, 239 N.W. 709, 714; First Nat. Bank of Hawkeye v. Raatz, 1929, 208 Iowa 1189, 225 N.W. 856, 857; Moore v. Altmyer, 1925, 199 Iowa 368, 202 N.W. 214, 215. Similarly, the legal effect of a written

lease which does not place upon a landlord the duty to repair is to relieve him of such duty and a contemporaneous or prior parol contract may not be introduced to vary such legal effect. Jones v. Sargent, 1922, 193 Iowa 1256, 188 N.W. 818, 819; Banwart v. Shullenburg, 1920, 190 Iowa 418, 180 N.W. 190, 192. The reason for the rule has been said to be that because the parties have made the writing the memorial of their understanding, it constitutes the contract as a matter of law and nothing may be added to it or substituted in its stead. Martin v. Stewart Motor Sales, 1955, 247 Iowa 204, 73 N.W.2d 1, 4; City of Des Moines v. City of West Des Moines, 1953, 244 Iowa 310, 56 N.W.2d 904, 906. But, as the Iowa Court has said in In re Simplot's Estate, 1933, 215 Iowa 578, 246 N.W. 396, at pages 397–398:

> "The parties agree in the broad statement of the rule which forbids the acceptance of parol evidence to contradict or vary the terms of a written contract. Their disagreement arises over the application of the rule and over the so-called 'exceptions' to the rule. There are certain well-recognized classes of cases to which the 'parol evidence rule' is not applicable. * * *"

Such is the area of disagreement in the instant case. The Court then went on to list a few of the so-called exceptions to the rule, stating (at page 398 of 246 N.W.):

> "These so-called 'exceptions' may be classified in the main as follows:
>
> "1. The rule has no application to suits in equity for reformation of written contracts. Parol evidence is always admissible in such a case.
>
> "2. Where the written contract is unilateral only, such as a promissory note, the nature of the consideration therefor may always be shown by parol evidence unless the note itself specifies such consideration.
>
> "3. An oral contract contemporaneous with a written one, which

is purely collateral, is provable by parol evidence provided that such oral contract is complete in itself and does not contradict or vary any of the terms of the written contract. * * *

"4. Parol evidence is admissible to prove that the delivery of a contract in a given case was conditional only and that compliance with the condition failed. Such parol evidence must be directed solely to the fact of *delivery* and to the conditions thereof. Such parol evidence does not operate to alter in any way the *terms* of the contract. If conditional delivery be proved, and that compliance with the condition failed, then the *entire contract* fails regardless of its terms. The entire contract is deemed not to have become effective.

"5. A single contract may be expressed partly in writing and partly in parol. However, a written contract is presumed to be complete and to comprise the entire transaction unless it otherwise appears from the written terms of the contract itself. * * *

"The foregoing comprise the so-called 'exceptions' to the parol evidence rule. They indicate the fields of debate. * * *"

The instant case concerns itself principally with the so-called conditional delivery exception to the parol evidence rule. It is the position of the defendants that parol evidence is admissible to show that the contracts and notes in question were delivered only on the condition that the plaintiff provide defendants with enough credit to feed their turkeys for the entire 1957 season and that plaintiff failed to comply with the condition. This evidence, defendants claim, creates a fact issue which must be submitted to a jury. The defendants seek to use the breach of the same condition as the basis for their counterclaim. It appears that the affirmative defenses offered by the defendants to the three counts in the complaint are but a restatement of the counterclaim urged as a set off.

The Restatement of Contracts, Sec. 241 (1932) provides:

"Where parties to a writing which purports to be an integration of a contract between them orally agree, before or contemporaneously with the making of the writing, that it shall not become binding until a future day or until the happening of a future event, the oral agreement is operative if there is nothing in the writing inconsistent therewith."

An examination of the Iowa cases reveals that there is a group of cases in which it has been held that parol evidence may be used to show that a writing is not to become binding until a future time or the happening of a future event. In Anderson Bros. & Johnson Co. v. Sioux Monument Co., 1930, 210 Iowa 1226, 232 N.W. 689, a written order for certain monuments was given to the seller's agent. Evidence of a contemporaneous oral agreement which provided that the order was not to become effective until approved by the agent's company was held to be admissible. In Healy v. Hohn, 1912, 157 Iowa 375, 138 N.W. 551, a written contract to convey realty was executed. Evidence of a contemporaneous oral agreement that the contract was not to become binding until signed by the wife of one of the parties was held to be admissible. See also Garner v. Kratzer, 1915, 173 Iowa 292, 155 N.W. 296. Most of the Iowa cases involving conditional delivery involve negotiable instruments. Section 541.16, Code of Iowa 1958, I.C. A., provides specific statutory authorization for the defense of conditional delivery in cases involving negotiable instruments. It provides in part:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be

effectual, must be made either by or under the authority of the party making, drawing, accepting, or indorsing, as the case may be; *and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument. * * "* (Emphasis supplied.)

The Iowa Court has indicated that the statute in no way abrogates the parol evidence rule. State Bank v. Central Flour & Feed Co., 1939, 227 Iowa 596, 288 N.W. 614, 617; Klemm v. Weil, 1922, 194 Iowa 1073, 190 N.W. 388, 390. The Court has said that the principles involved are the same whether the written contract is a negotiable instrument or an ordinary contract. Versteeg v. Hoeven, 1931, 214 Iowa 92, 239 N.W. 709, 712. Cases holding parol evidence admissible to establish the conditional delivery of a negotiable instrument include Walker v. Todd, 1938, 225 Iowa 276, 280 N.W. 512, where an oral agreement that a note was delivered conditionally in connection with a lease and option arrangement and was not to become binding until the maker repurchased a certain farm under such arrangement was admitted; and Waukee Savings Bank v. Jones, 1916, 179 Iowa 261, 159 N.W. 691, where an oral agreement that a note was not to become binding until a particular date was admitted. See also Short v. Anderson, 1943, 233 Iowa 238, 8 N.W.2d 740, 743. Cases involving the conditional delivery of negotiable instruments are collected in annotations appearing in 105 A.L.R. 1346 (1936); 54 A.L.R. 702 (1928); and 20 A.L.R. 421 (1922).

█ As stated in the quotation from the case of In re Simplot's Estate heretofore set out, the rationale behind admitting parol testimony that a contract has been conditionally delivered is that the evidence is not offered to contradict the terms of the writing but rather to show that the writing never had any valid legal existence. This is the reasoning of the Court in Versteeg v. Hoeven, supra; Hills Savings Bank v. Hirt, 1927,

204 Iowa 940, 216 N.W. 281, 283; Travers-Newton Chautauqua System v. Naab, 1923, 196 Iowa 1313, 196 N.W. 36, 37, 32 A.L.R. 780. For this reason, the oral condition, to be shown, must be a condition precedent to the instrument becoming a binding obligation, and not a condition subsequent which discharges a duty of performance under an existing binding agreement. In Klemm v. Weil, supra, the Court stated (at page 390 of 190 N.W.):

"The line of demarcation between the rule which forbids the admission of contemporaneous parol evidence to vary a writing and the rule of the statute which permits parol evidence to show the conditions upon which or the purpose for which an instrument was delivered is a very fine one, and in order to be guarded at all must be guarded diligently. * * * "

The above statement of the Court was quoted with approval in State Bank v. Central Flour & Feed Co., 1939, 227 Iowa 596, 288 N.W. 614, 617. In Hills Savings Bank v. Hirt, supra, the Court, in refusing to allow a defense of conditional delivery in a suit on a promissory note because such defense was not properly pleaded, stated (at page 283 of 216 N.W.):

"There is a vast distinction between conditional delivery and an agreement that there should be liability only in a certain event. 'Parol evidence is admissible to show conditions relating to the delivery or taking effect of the instrument * * but evidence is not admissible which, conceding the existence and delivery of the contract or obligation, and that it was at one time effective, seeks to nullify, modify, or change the character of the obligation itself by showing that it is to cease to be effective, or is to have an effect different from that stated therein, upon certain conditions or contingencies, for this does vary or contradict the terms of the writing.' "

In Hoover v. Hoover, 1940, 228 Iowa 981, 291 N.W. 154, the Court refused to allow the admission of parol evidence that a note was to be paid only out of the proceeds from a piece of land. The Court stated (at page 157 of 291 N.W.):

"While the general rule is that parol evidence is admissible to show that a note was conditionally delivered, it is not admissible to show that the payment of the note was to be made out of a specific fund, *one being a condition precedent and the other a condition subsequent.* * * *" (Emphasis supplied.)

To the same effect, see Farmers' Savings Bank of Slater v. Weeks, 1929, 209 Iowa 26, 227 N.W. 508, 509; McKnight v. Parsons, 1907, 136 Iowa 390, 113 N.W. 858, 860, 22 L.R.A., N.S., 718. In the case of Farmers' Savings Bank of Slater v. Weeks, supra, the defendants executed a mortgage on real estate and personal property to secure certain notes. When the plaintiff brought an action to foreclose the mortgage, the defendants offered evidence to the effect that the plaintiff at the time of the execution of the mortgage had agreed to extend the time of payments and that in no event would it take the personal property included in the mortgage. In considering the contention of the mortgagees, the Court stated (at page 509 of 227 N.W.):

"Nor can the contention be sustained as supporting the plea of *conditional* delivery. Concededly the mortgage was then and there delivered to the payees, and was intended to go into effect so far as the real estate was concerned. The condition contended for was not to be precedent to delivery, but had relation to the enforcement of the instrument after delivery. A condition to delivery suspends for the time being the contract as a whole. It can have no effect to qualify or modify the terms of the contract as written. The performance of the condition must be precedent to the delivery. The case presented by the defendants is not one of conditional delivery at all. * * *"

As indicated by the cases just discussed, the rule articulated by the Iowa Court as to the admission of oral conditions which limit or alter contractual agreements reduced to writing clearly forbids the introduction of evidence affecting the performances under the written contract once such contract has a valid legal existence. It is pointed out in the article by Loth and Jennings, supra, that all of the Iowa cases can not be reconciled with the rule just announced. It is suggested, however, that deviations are the result of the difficulties inherent in the application of the rule, as stated, to the facts, and in no way reflect upon its theoretical accuracy. It would seem that admitting evidence bearing upon the performance of an agreement rather than its existence would tend to seriously impair the Iowa rule.

The defendants allege that the condition under consideration in the instant case is a condition precedent to the contract's legal existence. In regard to the first turkey finance contract, Mr. Yoder testified in his deposition:

"* * * when Lockwood got through, he [Kalkbrenner] approached me and took me over to another table. That was where we talked in the office, and so I—I took the contract and I hesitated. I read it and I signed it, and I picked it up, and I told Kalkbrenner, I said, 'I will give you this contract under one condition, that you will take care of me the way you did in the past * * * and your company will take me through this turkey year, stand back of me and furnish me the feed to go through, just as Lockwood and I had talked, and if you will, I will let you have this contract,' and he said, 'We have in the past, and we are going to do it in the future. We will do it next year,' so I gave it to him."

The persons referred to by him were representatives of the plaintiff. It is the

view of the Court that it would require a strained construction of the transaction just described to find that the condition that plaintiff should feed out defendants' turkeys for the entire season was intended as a condition precedent to the turkey finance contracts coming into legal existence. If such were the case, neither party would have been bound until the 1957 turkey season had been completed and the defendants' turkeys had been completely fed out on the plaintiff's feed. At any time up to this point, the defendants, if their contentions are correct, could have backed out of the transaction leaving the plaintiff only a quantum meruit recovery. Similarly, if defendants' contentions are correct, plaintiff was under no obligation to advance defendants any credit until it had advanced them a whole year's credit. It is hard to imagine that either party contemplated this type of arrangement. Furthermore, if this were the case, it is hard to see how the defendants can substantiate their counterclaim which is founded on a theory of breach of contract. It must be founded on the written turkey finance contracts because any cause of action founded on the oral inducing promise of the plaintiff's agents would be barred by the parol evidence rule. Under that rule collateral oral agreements may not be shown if they are contrary to the terms of the writing. In re Simplot's Estate, supra; Parriott v. Levis, 1923, 196 Iowa 875, 195 N.W. 578, 580; Restatement of Contracts, Sec. 240 (1932). It is only when such agreements are not inconsistent with the writing that they may be shown. See Blunk v. Kuyper, 1950, 241 Iowa 1138, 44 N.W.2d 651, 655; Mason v. Cater, 1921, 192 Iowa 143, 182 N.W. 179, 180; Banwart v. Shullenburg, 1920, 190 Iowa 418, 180 N.W. 190, 192; Sutton v. Griebel, 1902, 118 Iowa 78, 91 N.W. 825.

Even if it be assumed that the alleged condition was intended to be a condition precedent to the legal existence of the turkey finance agreements, it is the view of the Court that such condition may, nonetheless, not be shown by parol evidence. Even a condition precedent may not be shown by parol testimony when the alleged condition is inconsistent with the express terms of the writing. This is clearly the position of the Restatement of Contracts. Section 241 thereof, which is quoted supra, states the conditional delivery rule and then qualifies it by stating "the oral agreement is operative *if there is nothing in the writing inconsistent therewith.*" (Emphasis supplied.) The illustration to that section of the Restatement is as follows:

"*A* and *B* make and sign a writing in which *A* promises to sell and *B* promises to buy goods of a certain description at a stated price. The parties at the same time orally agree that the writing shall not take effect unless within ten days their local railroad has cars available for shipping the goods. The oral agreement is operative according to its terms. If, however, the writing provides 'delivery shall be made within thirty days' from the date of the writing, the oral agreement is inoperative."

The requirement that the alleged condition precedent must not be inconsistent with the writing has often been stated by the Iowa Court. See Versteeg v. Hoeven, 1931, 214 Iowa 92, 239 N.W. 709, 712; Farmers' Savings Bank of Slater v. Weeks, 1929, 209 Iowa 26, 227 N.W. 508, 509; Travers-Newton Chautauqua System v. Naab, 1923, 196 Iowa 1313, 196 N.W. 36, 32 A.L.R. 780. The latter case would seem to be very much in point as to the issue in the present case. There, a written contract provided that the defendant was to purchase a number of season tickets to the entertainments produced by the plaintiff. The written contract provided that it was not to become valid until signed by at least nine other purchasers. The defendant later refused to purchase the tickets contracted for and sought to defend against a suit for the purchase price by establishing a contemporaneous oral agreement that the contract was not to

become binding unless signed by ten or more persons who were financially responsible, including three designated persons. The trial court refused to allow the defendant to offer evidence of the alleged oral condition upon which the contract was delivered. The Supreme Court affirmed, stating (at page 37 of 196 N. W.):

"This rule [of conditional delivery] is of necessity applied in cases where the written instrument itself is silent on the subject-matter of the condition precedent which it is sought to establish by parol. But, where the written instrument speaks on the very subject-matter of the condition precedent which it is sought to establish by parol, then a different rule must obtain. In such an instance, the writing itself is sought to be obviated or modified by proof of a contemporaneous parol agreement, and this cannot be done.
\* \* \*

\* \* \* \* \* \*

"Were the contract entirely silent on this subject-matter, it might well be said that a condition precedent of this character might be established, without doing violence to the parol evidence rule. In the instant case, however, the parties have bound themselves by providing in the contract in regard to the very subject-matter of a condition precedent to its validity. Let it be remembered at this point that there is no claim of any fraud or misrepresentation whatsoever. \* \* \* This action is not in equity to reform the instrument, but the appellants seek by parol to modify and change the provisions thereof, so that, instead of reading 'not valid until signed by 10 or more persons,' it should read 'not valid until signed by 10 or more *financially responsible persons, including A. F. Miller, E. A. Landis, and Dr. C. W. Tyler.*' "

The instant case varies from the Naab case only in the respect that the written contract in the Naab case dealt specifically with the subject matter of the alleged condition as a condition precedent, while the written contract in the instant case deals with the subject matter of the alleged condition in terms of it being part of the consideration given by one of the parties thereto. It is the view of the Court that the principles are the same and when the subject matter of an alleged condition precedent is dealt with in the written instrument, in any form, the condition may not be shown by parol evidence to be different from the manner in which it is expressed in the writing. Support for this view and for its application to the facts of the instant case is indicated by the Iowa cases of Clayman v. Bibler, 1930, 210 Iowa 497, 231 N.W. 334, 336; Burrier v. Sheriff, 1929, 207 Iowa 692, 223 N.W. 395, 396, and Dimmitt v. Johnson, 1925, 199 Iowa 966, 203 N.W. 261, 264. These cases hold that where the consideration is made one of the contractual terms of the writing, it may not be varied by parol evidence. In Clayman v. Bibler, supra, the Court stated (at page 336 of 231 N.W.):

"The rule that where the consideration expressed in the contract is in itself a promise, and therefore contractual, it cannot generally be varied by parol, is of practical universal application. \* \* \* "

See also Stoffel v. Stoffel, 1950, 241 Iowa 427, 41 N.W.2d 16, 19, 14 A.L.R.2d 891. In the instant case the turkey finance contracts are bilateral in nature. Each provides "in consideration of the mutual and several promises herein contained, it is hereby agreed by and between the parties herein as follows." The nature of the contracts is for the most part a promise by the plaintiff to furnish financial assistance to the defendants up to and not in excess of a fixed maximum figure, which promise was given in exchange for the promises of the defendants to purchase all their turkey feed from Nutrena for the period covered by the contract. Defendants' efforts to establish an oral condition that the contract was not to take effect until they had received enough feed to completely feed out their

turkeys, even if this would call for amounts in excess of the credit promised in the written agreement, would have the effect of substantially altering the obligations undertaken by the plaintiff. In Blair v. Buttolph, 1887, 72 Iowa 31, 33 N.W. 349, the writing provided that the defendant was to pay to the plaintiff construction company a sum of money one year after a railroad was completed to Iowa Falls by that company. In a suit to recover payment on the written contract, the defendant sought to defend upon the theory that part of the consideration for his promise had been an oral agreement that the plaintiff would also extend the railroad to Forest City within one year of the date fixed in the contract for completion of the railroad to Iowa Falls. In sustaining a demurrer to the defendant's answer, the Court said (at page 350 of 33 N.W.):

"His undertaking was that he would pay the specified sum of money upon the performance by the other party of the single condition named in the contract. By the terms of the written instrument, the performance of that condition is made the sole consideration for his promise to pay the money. In the paragraphs of the answer in question he alleges that he was induced in part to enter into the agreement by another promise, entirely different and distinct from that, and that that promise has been broken. But when the parties, by their writing, made the completion of the railroad to Iowa Falls within the specified time the condition upon which his liability to pay the money should accrue, they definitely fixed that as the condition of the contract, and the conclusive presumption is that all other conditions were excluded. When, by the express terms of the written agreement, a particular condition is made the consideration for the undertaking, it is no more competent to contradict or vary its terms by parol evidence, as to the consideration by which it is supported, than as to its other conditions.
* * *"

The cases which lend some support to the position of the defendants are the several cases where parol evidence has been admitted to show an oral understanding between the payee and the maker of a note that the principal of the note need not be paid according to its terms. It is somewhat difficult to reconcile the decisions in such cases with the other Iowa decisions. In Oakland Cemetery Ass'n of Lyons v. Lakins, 1904, 126 Iowa 121, 101 N.W. 778, 779, the defendants alleged in a suit on a promissory note executed by them to the plaintiff's intestate that the note had been delivered upon the oral condition that the defendants were to pay the interest on the note during the life of plaintiff's intestate and upon his death the obligation was to be extinguished. The trial court sustained the plaintiff's demurrer to the answer on the basis that the parol evidence rule would prohibit the introduction of evidence in support of the alleged defense. The Supreme Court reversed, holding that the evidence of such an oral condition did not violate the parol evidence rule. In Ball v. James, 1916, 176 Iowa 647, 158 N.W. 684, the defendants, in a suit on a promissory note, admitted the execution of the note but alleged that the oral understanding at the time of its delivery was such that the defendants were to pay only the interest on the note during the life of plaintiff's testator and that the principal of the note would never have to be paid. The trial court overruled a demurrer to the answer. On appeal the Supreme Court affirmed, holding that evidence of the alleged oral arrangement would not violate the parol evidence rule. Similar holdings to the effect that parol evidence is admissible to show that notes were delivered on the understanding that interest on the notes was to be paid during the life of the payee and that, at the death of the payee, all obligation on the note was to be extinguished are found in Herron v. Brinton, 1920,

188 Iowa 60, 175 N.W. 831, and in Brierly v. Dunnick, 1949, 240 Iowa 1359, 39 N. W.2d 645.

While most of the cases just mentioned speak of the conditional delivery exception to the parol evidence rule and the admissibility of the parol evidence involved under that theory, it should be noted that conditional delivery has at best served as no more than an alternative ground for these decisions. In Brierly v. Dunnick, supra; Herron v. Brinton, supra; and Oakland Cemetery Ass'n of Lyons v. Lakins, supra [126 Iowa 121, 101 N.W. 779], the Court indicated that the parol evidence in question was admissible so as to show the real consideration for the note sued upon and to show that the note had been discharged "although the transaction involves proof of a collateral parol agreement." In Ball v. James, supra, the Court stated (at page 686 of 158 N.W.):

" * * * neither the note nor mortgage recited the consideration, and, though this is presumed as between the parties, it is subject to proof, and the evidence that in addition to an amount of money loaned there was an executory agreement, in no manner violates the rule excluding parol evidence tending to vary the terms of a written instrument. * * * "

The rationale of Ball v. James, supra, seems to be approved in Britton, Bills and Notes, p. 223 (1943), where it is stated:

"There exists an apparent exception to the rule that a parol agreement, contemporaneous with the delivery of the instrument as a contract, cannot be proved if its tendency is to discharge the instrument in some way other than those recognized by the statute, and that apparent exception is this: if the agreement describes acts or events as acts of discharge and such acts or events have been promised by the payee, then the non-occurrence of such acts or events constitutes a breach of contract by the payee. A breach of contract by the payee may also be called a failure of consideration as this term is used in Sec. 28 [Sec. 541.28, Code of Iowa 1958]. As against non-due course holders a failure of consideration always may be proved by parol to defeat liability on the instrument."

If the rationale that the parol evidence in the above cases was admissible as tending to show a failure of consideration is accepted, such cases might more properly be classed as falling within the second exception set forth in In re Simplot's Estate, supra, [246 N.W. 398] i. e., that where "the written contract is unilateral only, such as a promissory note, the nature of the consideration therefor may always be shown by parol evidence unless the note itself specifies such consideration." Whatever the justification for or rationale supporting the above discussed cases is felt to be, their holdings should not be extended so as to allow the introduction of parol evidence tending to alter the expressed consideration in a truly bilateral contract.

It is the view of the Court that the alleged oral arrangement between the plaintiff and the defendants can not realistically be said to have been intended as a condition precedent to the legal existence of a binding contract. Even if the contract were delivered with the understanding that certain conditions would be so, such oral arrangements were at the most a collateral promise inducing the execution of the written instrument. Because the terms of the collateral promise are dealt with in the writing, they can not be shown by parol evidence. It is furthermore the view of the Court that even if the alleged oral arrangement might be considered a condition precedent, it is not admissible because the subject matter involved is dealt with in the writing.

So far consideration has been given almost entirely to the conditional delivery of the two turkey finance contracts and varying the maximum dollar limitations provided in those written contracts. As heretofore noted, the defendants also

allege that each and every note delivered under those contracts was conditionally delivered. The notes, taken alone, make no reference to any of the terms of the written contracts, so it might be argued that, although parol evidence is not admissible to vary the provisions of the written contracts, the alleged conditional delivery is in no way repugnant to the notes themselves and thus parol evidence may be introduced to show that the delivery of the notes was not to become effective until the plaintiff had financed the defendants for the entire 1957 season. It also might be urged that as to the notes, taken alone, parol evidence might be admissible under the rationale of failure of consideration previously discussed. The plaintiff's action is based upon the written contracts. The notes merely evidence the advancements made pursuant to the contracts.

■ The Iowa case which seems most nearly to approximate the instant case in this respect is State Bank v. Central Flour & Feed Co., 1939, 227 Iowa 596, 288 N.W. 614. In that case defendant and plaintiff's assignor entered into a written agreement whereby defendant was to be the exclusive wholesale jobber in certain counties for poultry feed distributed by plaintiff's assignor. The agreement provided that in connection with the sale and delivery of said products the defendant agreed to execute and deliver to the plaintiff's assignor trade acceptances or notes as evidence of the purchase price. In addition, the agreement provided that the plaintiff's assignor was to provide a salesman for the territory to assist in drumming up business for the defendant. Pursuant to the written agreement, trade acceptances were executed by defendant to plaintiff's assignor. The plaintiff later brought suit on some of the drafts and as a defense as to one such draft the defendant urged that it had been delivered only on the condition that plaintiff's assignor was to make full performance under the written contract including the furnishing of a salesman which it had not done. The case was submitted to the jury on

this theory and a verdict was returned for the defendant on the particular draft. On appeal the Supreme Court reversed, holding that a verdict should have been directed for the plaintiff below. The Court held that the written agreement requiring defendant to execute the drafts in exchange for merchandise received required him to deliver them unconditionally and parol evidence as to conditional delivery of the drafts would violate the parol evidence rule. State Bank v. Central Flour & Feed Co. differs from the case at hand in that there was no allegation that the original written contract, pursuant to which the drafts were delivered, had been conditionally delivered. However, because the Court here finds that the parol evidence rule forecloses proof of the invalidity of the written contracts, the holding in State Bank v. Central Flour & Feed Co. seems to foreclose any additional defense as to conditional delivery of the individual notes involved.

It should be noted that although heretofore consideration has been directed toward defendants' liability under the turkey finance contracts and upon the notes executed pursuant to those contracts, the same reasons which preclude parol evidence as to those transactions forbid its admission to vary the hog contract and note which is the basis of Count III of the complaint. And, as has been stated before, the reasons which force the Court to deny defendants' affirmative defenses also serve to deny defendants any relief under their counterclaim.

If a trial were had in this case, the Court would have to sustain the objections of the plaintiff to the proffered parol evidence of the defendants purporting to vary the terms of the documents in question on the ground that the Iowa parol evidence rule forbids its introduction, which would leave no factual issues for the jury to determine as to the claims of the plaintiff. In the case of Ford v. Luria Steel & Trading Corporation, 8 Cir., 1951, 192 F.2d 880, the defendant sought in its counterclaim to establish a

profit-sharing agreement by parol evidence. The trial court dismissed the counterclaim. On appeal that dismissal was affirmed. The Court stated (at page 882):

"The controlling question in this case is whether evidence to establish the defendants' alleged oral profit-sharing agreement would be admissible upon a trial. Nothing is more futile than calling a jury to determine a fact the existence of which is not susceptible of proof. The defendants on this appeal are in no worse position than they would have been in had the District Court upon a jury trial excluded the evidence tending to establish their alleged oral agreement and directed a verdict and entered a judgment for the plaintiff."

There is another matter that requires consideration. While the plaintiff's action is based upon the written contracts, it asks for the recovery of attorney fees provided for in the notes representing the advancements under the contracts.

Section 625.22, Code of Iowa 1958, I.C. A., provides as follows:

"When judgment is recovered upon a written contract containing an agreement to pay an attorney's fee, the court shall allow and tax as a part of the costs:

"1. On the first two hundred dollars or fraction thereof recovered, ten percent.

"2. On the excess of two hundred to five hundred dollars, five percent.

"3. On the excess of five hundred to one thousand dollars, three percent.

"4. On all sums in excess of one thousand dollars, one percent."

Section 625.23, Code of Iowa 1958, I.C.A., relates to the amount of the fee where the claim is paid before judgment is entered. Where attorney fees are given by a state statute as an incident to a cause of action arising under state law, recovery may be had therefor in a federal court case based on such cause of action. Associated Mfrs. Corporation of America v. De Jong, 8 Cir., 1933, 64 F.2d 64. It would seem clear that where in a federal court action a party seeks to recover attorney fees provided for by a state statute, such party must comply with the provisions of that statute.

Section 625.24, Code of Iowa 1958, I. C.A., provides as follows:

"The attorney's fee allowed in sections 625.22 and 625.23 shall not be taxed in any case unless it shall appear by affidavit of the attorney, filed with the petition at the commencement of the action, that there has been, and is, no agreement between such attorney and his client, express or implied, nor between him and any other other person, except a practicing attorney engaged with him as an attorney in the cause, for any division or sharing of the fee to be taxed, which, when taxed, shall be only in favor of a regular attorney and as compensation for services actually rendered in the action."

Through oversight the affidavit required by Section 625.24 was not filed in this action. Where the affidavit required by that Section is not filed in a proceeding in federal court, the claim for such fee under what is now Section 625.22 is properly denied. In re Hersey, D.C.N.D.Iowa 1909, 171 F. 1004.

The Court finds from the pleadings and depositions on file that there is no genuine issue as to any material fact on the claims of the plaintiff against the defendants and that the plaintiff is entitled to judgment against the defendants for the amount of its claims, excepting attorney fees.

It is the ruling of the Court that the plaintiff is not entitled to recover attorney fees.

It Is Hereby Ordered that the motion of the plaintiff for summary judgment against the defendants be and the same is hereby sustained.